# United States Court of Appeals
## *for the*
## Fourth Circuit

MSP RECOVERY CLAIMS, SERIES LLC, a Delaware series limited liability company; MSPA CLAIMS 1, LLC, a Florida limited liability company; MSP RECOVERY CLAIMS SERIES 44, LLC, a Delaware series limited liability company; MSP RECOVERY CLAIMS PROV, SERIES LLC, a Delaware series limited liability company; MSP RECOVERY CLAIMS CAID, SERIES LLC, a Delaware series limited liability company, on behalf of themselves and all others similarly situated,

*Plaintiffs/Appellants*,

— v. —

LUNDBECK LLC, a Delaware corporation; CARING VOICE COALITION, INC., an Idaho non-profit corporation; THERACOM, LLC, an Ohio corporation; ADIRA FOUNDATION, f/k/a Facilitating Patient Health, a Virginia non-profit corporation,

*Defendants/Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

# BRIEF OF APPELLANTS

Shereef H. Akeel
Adam S. Akeel
Samuel R. Simkins
Daniel W. Cermak
Hayden Pendergrass
AKEEL & VALENTINE, PLC
888 W. Big Beaver Road, Suite 350
Troy, MI 48084
(248) 269-9595
*Counsel for Appellants*

John W. Cleary
MSP RECOVERY LAW FIRM
2701 S. LeJeune Road, 10th Floor
Coral Gables, FL 33134
(305) 614-2222
*Counsel for Appellants*

David Hilton Wise
William N. Evans
WISE LAW FIRM, PLC
10640 Page Street, Suite 320
Fairfax, VA 22030
(703) 934-6377
*Counsel for Appellants*

CP COUNSEL PRESS  (800) 4-APPEAL • (JOB 810228)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>24-1043</u>      Caption: <u>MSP Recovery Claims et al. v. Lundbeck LLC et al</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>MSP Recovery Claims CAID, Series LLC</u>
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?   ☐ YES ☑ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
     If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☑YES ☐NO
If yes, identify entity and nature of interest:

  See attached.

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ William N. Evans                    Date:        01/26/2024

Counsel for: MSP Recovery Claims CAID, Series

- 2 -

[ Print to PDF for Filing ]

MSP Recovery Claims CAID, Series LLC Recovery Claims, Series LLC, a Delaware series limited liability company, states that MSP Recovery, LLC, a Florida limited liability company, is the sole member of MSP Recovery Claims CAID, Series LLC. MSP Recovery, LLC's sole member is Lionheart II Holdings, LLC, a Delaware limited liability company. Lionheart II Holdings, LLC's parent company is MSP Recovery, Inc., d/b/a LifeWallet, a publicly traded Delaware corporation, which owns 10% or more of the membership interest of Lionheart II Holdings, LLC. Except as stated above, there is no publicly held corporation that owns 10% or more of the stock of the entities listed above.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No.  24-1043      Caption:  MSP Recovery Claims, Series LLC et al. v. Lundbeck LLC et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

MSP Recovery Claims PROV, Series LLC
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☑YES ☐NO
     If yes, identify entity and nature of interest:

       See attached.


5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:


6.   Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.


7.   Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.


Signature: /s/ William N. Evans                          Date:        01/26/2024

Counsel for: MSP Recovery Claims PROV Series

Print to PDF for Filing

MSP Recovery Claims PROV, Series LLC Recovery Claims, Series LLC, a Delaware series limited liability company, states that MSP Recovery, LLC, a Florida limited liability company, is the sole member of MSP Recovery Claims PROV, Series LLC. MSP Recovery, LLC's sole member is Lionheart II Holdings, LLC, a Delaware limited liability company. Lionheart II Holdings, LLC's parent company is MSP Recovery, Inc., d/b/a LifeWallet, a publicly traded Delaware corporation, which owns 10% or more of the membership interest of Lionheart II Holdings, LLC. Except as stated above, there is no publicly held corporation that owns 10% or more of the stock of the entities listed above.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No.  24-1043          Caption:  MSP Recovery Claims, Series LLC et al. v. Lundbeck LLC et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

MSP Recovery Claims Series 44, LLC
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2. Does party/amicus have any parent corporations?  ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
   If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ William N. Evans       Date: 01/26/2024

Counsel for: MSP Recovery Claims Series 44

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1043__    Caption: __MSP Recovery Claims et al. v. Lundbeck LLC et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__MSP Recovery Claims, Series LLC__
(name of party/amicus)


_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?    ☐YES ☑NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☑YES ☐NO
If yes, identify entity and nature of interest:

See attached.

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ William N. Evans _____   Date: _____01/26/2024_____

Counsel for: __MSP Recovery Claims, Series LLC___

Print to PDF for Filing

MSP Recovery Claims, Series LLC, a Delaware series limited liability company, states that VRM MSP Recovery Partners, LLC, a Delaware limited liability company, is the sole member of MSP Recovery Claims, Series LLC. The members of VRM MSP Recovery Partners, LLC are (i) Virage Recovery Master LP, a Delaware limited partnership, (ii) Series MRCS, a designated series of MDA, Series LLC, a Delaware series limited liability company, and (iii) MSP Recovery, LLC, a Florida limited liability company. MSP Recovery, LLC's parent company is Lionheart II Holdings, LLC. Lionheart II Holdings, LLC's parent company is MSP Recovery, Inc. d/b/a LifeWallet, a publicly traded Delaware corporation, which owns 10% or more of the membership interest of Lionheart II Holdings, LLC. Except as stated above, there is no publicly held corporation that owns 10% or more of the stock of the entities listed above.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1043__      Caption: __MSP Recovery Claims et al. v. Lundbeck LLC et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__MSPA Claims 1, LLC__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO

2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☑YES ☐NO
If yes, identify entity and nature of interest:

  See attached.

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ William N. Evans                          Date: _____01/26/2024_____

Counsel for: MSPA Claims 1, LLC

- 2 -

[ Print to PDF for Filing ]

MSPA Claims 1, LLC Recovery Claims, Series LLC, a Florida limited liability company, states that MSP Recovery Services, LLC, a Florida limited liability company, is the sole member of MSPA Claims 1, LLC. The sole member of MSP Recovery Services, LLC, is MSP Recovery, LLC, a Florida limited liability company. MSP Recovery, LLC's sole member is Lionheart II Holdings, LLC, a Delaware limited liability company. Lionheart II Holdings, LLC's parent company is MSP Recovery, Inc., d/b/a LifeWallet, a publicly traded Delaware corporation, which owns 10% or more of the membership interest of Lionheart II Holdings, LLC. Except as stated above, there is no publicly held corporation that owns 10% or more of the stock of the entities listed above.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES .................................................................1

STATEMENT OF THE CASE ..............................................................2

SUMMARY OF THE ARGUMENT .......................................................6

ARGUMENT .................................................................................7

   I.     STANDARD OF REVIEW .......................................................7

   II.    THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF-APPELLANTS' FEDERAL RICO CLAIMS .........................................9

     A.  The District Court's Reliance on *CVC* and *Ironworkers* Was Erroneous .................................................................................9

     B.  The District Court's Reliance on Other Authority Was Also Misplaced ...............................................................................16

   III.   THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF-APPELLANTS' STATE LAW CLAIMS .........................................26

   IV.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF-APPELLANTS' MOTION FOR INJUNCTIVE RELIEF .............31

   V.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF-APPELLANTS' MOTION TO ALTER OR AMEND JUDGMENT OR RELIEF FROM JUDGMENT .......................................................32

   VI.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF-APPELLANTS' REQUEST TO AMEND THE COMPLAINT ................................................................................42

     A.  Plaintiffs-Appellants Can Allege Facts That Their Assignors Were Direct Purchasers ......................................................................45

     B.  Plaintiffs-Appellants Can Allege Facts That Defendants-Appellees Proximately Caused Assignors' Injuries ......................................47

CONCLUSION ...........................................................................50

STATEMENT REGARDING ORAL ARGUMENT ...........................................50

## TABLE OF AUTHORITIES

Page(s)

Cases

*Abrahams v. Young & Rubicam, Inc.*,
  692 A.2d 709 (Conn. 1997) ............................................................... 28
*Aiken v. Indus. Comm'n*,
  53 N.E.2d 1018 (Ohio 1944) .............................................................. 28
*Aikens v. Ingram*,
  652 F.3d 496 (4th Cir. 2011) ................................................................. 8
*Alberts v. Glob. Tel\*Link*,
  68 F.4th 906 (4th Cir. 2023) ..................................................... Passim
*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) .................................................................... Passim
*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019) ........................................................................ 39
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 8
*Bivens Gardens Off. v. Barnett Banks of Fla.*,
  140 F.3d 898 (11th Cir. 1998) ........................................................... 36
*Blue Shield of Va. v. McCready*,
  457 U.S. 465 (1982) ............................................................................ 39
*Brandenburg v. Seidel*,
  859 F.2d 1179 (4th Cir.1988) ............................................................ 37
*Braynina v. TJX Companies, Inc.*,
  2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) ............................. 27, 42
*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) .................................................................... Passim
*Brown v. Kerkhoff*,
  504 F. Supp. 2d 464 (S.D. Iowa 2007) .............................................. 30
*Carter v. Berger*,
  777 F.2d 1173 (7th Cir. 1985) ........................................................... 38
*Casavant v. Norwegian Cruise Line Ltd.*,
  952 N.E.2d 908 (Mass. 2011) ........................................................... 28
*Cenco, Inc. v. Seidman & Seidman*,
  686 F.2d 449 (7th Cir. 1982) ............................................................. 38
*Chisolm v. TranSouth Fin. Corp.*,
  95 F.3d 331 (4th Cir. 1996) ............................................................... 37
*Coleman v. Md. Ct. of Apps.*,
  626 F.3d 187 (4th Cir. 2010) ............................................................... 8

ii

*Conn. Light & Power Co. v. Proctor*,
  118 A.3d 702 (Conn. App. Ct. 2015) ................................................... 30
*Connick v. Suzuki Motor Co., Ltd.*,
  675 N.E.2d 584 (Ill. 1996) ................................................................ 28
*Cont'l Cas. Co. v. Wis. Patients Comp. Fund*,
  473 N.W.2d 584 (Wis. 1991) ............................................................ 30
*Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*,
  796 F. Supp. 1078 (S.D. Ohio 1992) ................................................ 30
*Davis v. Piper Aircraft Corp.*,
  615 F.2d 606 (4th Cir. 1980) ............................................................ 44
*Delta Envtl. Consultants, Inc. v. Wysong & Miles Co.*,
  510 S.E.2d 690 (N.C. Ct. App. 1999) ............................................... 30
*Dennis v. Columbia Colleton Med. Ctr., Inc.*,
  290 F.3d 639 (4th Cir. 2002) .............................................................. 8
*Desiano v. Warner-Lambert Co.*,
  326 F.3d 339 (2d Cir 2003) .............................................................. 27
*Di Biase v. SPX Corp.*,
  872 F.3d 224 (4th Cir. 2017) ...................................................... Passim
*Digizip.com, Inc. v. Verizon Servs. Corp.*,
  139 F. Supp. 3d 670 (S.D.N.Y. 2015) ............................................... 30
*Duggan v. Martorello*,
  596 F. Supp. 3d 158 (D. Mass. 2022) ............................................... 30
*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) .............................................................. 7
*Erickson v. Pardus*,
  551 U.S. 89 (2007) ............................................................................. 7
*Exxon Co., U.S.A. v. Sofec, Inc.*,
  517 U.S. 830 (1996) ......................................................................... 11
*Faith Enters. Grp., Inc. v. Avis Budget Grp., Inc.*,
  2012 WL 1409403 (N.D. Ga. Apr. 20, 2012) ................................... 23
*Fed. Trade Comm'n v. Mylan Lab'ys, Inc.*,
  99 F. Supp. 2d 1 (D.D.C. 1999) ....................................................... 41
*First Am. Corp. v. Al-Nahyan*,
  17 F. Supp. 2d 10 (D.D.C. 1998) ..................................................... 27
*Fitzgerald v. Wildcat*,
  2023 WL 5345302 (W.D. Va. Aug. 18, 2023) ................................... 30
*Flint v. ABB, Inc.*,
  337 F.3d 1326 (11th Cir. 2003) ......................................................... 29
*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................... 43, 44

*Glob. Crossing Telecomms., Inc. v. Mich. Bell Tel. Co.*,
  2010 WL 2011502 (E.D. Mich. May 17, 2010)................................................ 30
*GolTV, Inc. v. Fox Sports Latin Am., Ltd.*,
  2018 WL 1393790 (S.D. Fla. Jan. 26, 2018) ................................................ 36
*Gov't Emps. Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*,
  2017 WL 1196438 (M.D. Fla. Mar. 29, 2017) ................................................ 42
*Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*,
  329 F.3d 1241 (11th Cir. 2003)................................................................ 29
*Hanover Shoe Inc., v. United Shoe Machinery Corp.*,
  392 U.S. 481 (1968) ............................................................................ 15
*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999)................................................................... 21
*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ................................................................... 18, 34, 35
*Humana Inc. v. Mallinckrodt ARD LLC*,
  2020 WL 3041309 (C.D. Cal. Mar. 9, 2020)................................................. 11
*Humana, Inc. v. Biogen, Inc.*,
  666 F. Supp. 3d 135 (D. Mass. 2023) ........................................................ 40
*Humana, Inc. v. Indivior, Inc.*,
  2022 WL 17718342 (3d Cir. Dec. 15, 2022) ....................................... 37, 38, 47
*Ibarra v. United States*,
  120 F.3d 472 (4th Cir. 1997)............................................................. 24, 25
*Ideal Steel Supply Corp. v. Anza*,
  652 F.3d 310 (2d Cir. 2011)................................................................... 18
*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ............................................................................ 35
*Illinois ex rel. Hammer v. Twin Rivers Ins. Co.*,
  2017 WL 2880899 (N.D. Ill. July 5, 2017)................................................... 30
*In re Actimmune Mktg., Litig.*,
  614 F. Supp. 2d 1037 (N.D. Cal. 2009) ...................................................... 26
*In re Am. Honda Motor Co., Inc. Dealerships Rels. Litig.*,
  941 F. Supp. 528 (D. Md. 1996) .............................................................. 23
*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  804 F.3d 633 (3d Cir. 2015)........................................................ 10, 11, 13, 17
*In re Copper Antitrust Litig.*,
  2000 WL 34230131 (W.D. Wis. July 12, 2000)............................................. 36
*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  536 F. Supp. 2d 1129 (N.D. Cal. 2008) ...................................................... 42
*In re Flonase Antitrust Litig.*,
  692 F. Supp. 2d 524 (E.D. Pa. 2010) ........................................................ 41

*In re Generic Pharms. Pricing Antitrust Litig.*,
    368 F. Supp. 3d 814 (E.D. Pa. 2019) .................................................. 41
*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) .................................................... 25
*In re Lidoderm Antitrust Litig.*,
    2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ..................................... 11
*In re Nat'l Prescription Opiate Litig.*,
    440 F. Supp. 3d 773 (N.D. Ohio 2020) .............................................. 11
*In re Nat'l Prescription Opiate Litig.*,
    452 F. Supp. 3d 745 (N.D. Oh. 2020) ................................................ 28
*In re Nat'l Prescription Opiate Litig.*,
    458 F. Supp. 3d 665 (N.D. Ohio 2020) .............................................. 30
*In re Neurontin Mktg. & Sales Pracs. Litig.*,
    712 F.3d 21 (1st Cir. 2013) ................................................... 11, 13, 17
*In re Neurontin Mktg. & Sales Pracs. Litig.*,
    799 F. Supp. 2d 110 (D. Mass. 2011) ................................................ 11
*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial*,
    159 F. Supp. 3d 898 (N.D. Ill. 2016) ................................................. 10
*In re Valsartan, Losartan & Irbesartan Multi-Dist. Litig.*,
    2024 WL 776757 (D.N.J. Feb. 26, 2024) ........................................... 32
*In re Volkswagen AG Sec. Litig.*,
    2023 WL 2505539 (E.D. Va. Mar. 14, 2023) ..................................... 25
*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    349 F. Supp. 3d 881 (N.D. Cal. 2018) ............................................... 23
*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
    336 F. Supp. 3d 1256 (D. Kan. 2018) ................................................ 36
*Ironworkers Loc. 68 v. AstraZeneca Pharms.*,
    634 F.3d 1352 (11th Cir. 2011) .................................................. Passim
*Jackson v. BellSouth Telecomms.*,
    372 F.3d 1250 (11th Cir. 2004) ........................................................ 42
*Katyle v. Penn Nat. Gaming, Inc.*,
    637 F.3d 462 (4th Cir. 2011) ............................................................ 43
*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ...................................................... 28
*Laber v. Harvey*,
    438 F.3d 404 (4th Cir. 2006) .................................................. 8, 43, 44
*Levey v. E. Stewart Mitchell, Inc.*,
    585 F. Supp. 1030 (D. Md. 1984) ..................................................... 38
*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    572 U.S. 118 (2014) ......................................................................... 35

*Libertad v. Welch*,
    53 F.3d 428 (1st Cir. 1995) ................................................................ 36

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) .............................................................. 43

*McCarthy v. Recordex Serv., Inc.*,
    80 F.3d 842 (3d Cir. 1996) ................................................................. 37

*Meardon v. Reg.*,
    994 F.3d 927 (8th Cir. 2021) .............................................................. 30

*Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*,
    18 F.3d 260 (4th Cir. 1994) .......................................................... 36, 37

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ................................................ 30

*MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*,
    2022 WL 17220647 (C.D. Cal. Oct. 20, 2022) .............................. 16, 17

*MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*,
    2023 WL 4162338 (C.D. Cal. May 19, 2023) ..................................... 17

*MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*,
    2022 WL 3155035 (S.D. Fla. July 21, 2022) ................................... 9, 10

*MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*,
    2022 WL 4448256 (S.D. Fla. Sept. 23, 2022) ...................................... 9

*Nature's Prod., Inc. v. Natrol, Inc.*,
    990 F. Supp. 2d 1307 (S.D. Fla. 2013) .............................................. 28

*NCNB Nat'l Bank of N.C. v. Tiller*,
    814 F.2d 931 (4th Cir. 1987) .......................................................... 36, 38

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ............................................................... 8

*Novell v. Migliaccio*,
    749 N.W.2d 544 (Wis. 2008) ............................................................. 28

*Office of Att. Gen. v. Bilotti*,
    267 So.3d 1 (Fla. Dist. Ct. App. 2019) .............................................. 28

*O'Kane v. Sembritzky*,
    2020 WL 4604500 (S.D. Tex. Aug. 11, 2020) ................................... 30

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms.
Co. Ltd.*,
    943 F.3d 1243 (9th Cir. 2019) ................................................ 3, 17, 23

*Peckham v. Cont'l Cas. Ins. Co.*,
    895 F. 2d 830 (1st Cir. 1990) ............................................................. 28

*Pfizer, Inc., v. U.S. Dep't of Health & Hum. Servs.*,
    42 F.4th 67 (2nd Cir. 2022) ................................................................. 2

*Pharm. Coal. for Patient Access v. United States*,
  2024 WL 187707 (E.D. Va. Jan. 17, 2024) ........................................ 2
*Safe Streets All. v. Hickenlooper*,
  859 F.3d 865 (10th Cir. 2017) ........................................ 39
*Scotts Co. v. United Indus. Corp.*,
  315 F.3d 264 (4th Cir. 2002) ........................................ 8
*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ........................................ 36
*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
  2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) .................................. 41
*Sidney Hillman Health Ctr. v. Abbott Labs.*,
  813 F.3d (7th Cir. 2017) ........................................ 17
*Spacesaver Corp. v. Marvel Grp., Inc.*,
  621 F. Supp. 2d 659 (W.D. Wis. 2009) .................................. 28
*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
  967 F.3d 295 (3d Cir. 2020) ........................................ 23
*Staley v. Gilead Scis., Inc.*,
  446 F. Supp. 3d 578 (N.D. Cal. 2020) .............................. 27, 41
*Starr v. VSL Pharms., Inc.*,
  509 F. Supp. 3d 417 (D. Md. 2020) .............................. Passim
*State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*,
  2011 WL 6450769 (M.D. Fla. Dec. 21, 2011) .................................. 30
*State Farm Mut. Auto. Ins. Co. v. Kugler*,
  2011 WL 4389915 (S.D. Fla. Sept. 21, 2011) ........................ 11, 15
*State, Off. Of Atty. Gen., Dep't of Legal Affs. v. Tenet Healthcare Corp.*,
  420 F. Supp. 2d 1288 (S.D. Fla. 2005) .................................. 29
*Stevenson Lumber Co., Suffield v. Chase Assocs., Inc.*,
  932 A.2d 401 (Conn. 2007) ........................................ 28
*Trollinger v. Tyson Foods, Inc.*,
  370 F.3d 602 (6th Cir. 2004) ........................................ 38
*U.S. ex rel. Aranda v. Cmty. Psychiatric Ctrs.*,
  945 F. Supp. 1485 (W.D. Okla. 1996) .................................. 12
*U.S. ex rel. Kneepkins v. Gambro Healthcare, Inc.*,
  115 F. Supp. 2d 35 (D. Mass. 2000) .................................. 12
*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
  525 F.3d 370 (4th Cir. 2008) ........................................ 8, 44
*UFCW Loc. 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010) ........................................ 17
*Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
  171 F.3d 912 (3d Cir. 1999) ........................................ 38

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA,*
  296 F. Supp. 3d 1142 (N.D. Cal. 2017) ............................................................. 27
*United States v. Regeneron Pharms., Inc.,*
  2020 WL 7130004 (D. Mass. Dec. 4, 2020) ......................................................... 2
*United States v. Rivera,*
  55 F.3d 703 (1st Cir. 1995) ............................................................................. 21
*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.,*
  140 F. Supp. 3d 138 (D. Mass. 2015) ................................................................. 30
*Wild Horse Concepts, LLC v. Hasbro, Inc.,*
  286 A.3d 848 (R.I. 2023) ................................................................................. 30

## Statutes

18 U.S.C. § 1952 .................................................................................................. 16
18 U.S.C. § 1961(1) .............................................................................................. 16
18 U.S.C. § 1962(c), (d) ....................................................................................... 3
28 U.S.C. § 1291 .................................................................................................. 1
28 U.S.C. § 1331 .................................................................................................. 1
28 U.S.C. § 1332(a), (d) ....................................................................................... 1
28 U.S.C. § 1368 .................................................................................................. 1
42 U.S.C. § 1320a-7(b)(6)(B) ................................................................................ 12
42 U.S.C. § 1320a-7b ....................................................................................... 4, 16
42 U.S.C. § 1320c-5(a)(1) ..................................................................................... 12
42 U.S.C. § 1395w-27(f)(3) ............................................................................. 22, 24
42 U.S.C. § 1395w-102(b) ............................................................................... 22, 24
42 U.S.C. § 1395w-112(b)(4)–(6) ..................................................................... 22, 24
Conn. Gen. Stat. § 42-110b(b) ............................................................................. 27
Fla. Stat. § 501.204(2) ......................................................................................... 27
Fla. Stat. § 817.234 ............................................................................................. 42
Ill. Comp. Stat. § 505/2 ....................................................................................... 27
Mass. Gen. Laws ch. 93A, § 2(b) .......................................................................... 27
Mich. Comp. Laws § 445.911(3)(c) ....................................................................... 27
Ohio Rev. Code Ann. § 1345.02(c) .................................................................. 27, 42

## Rules

Fed. R. Civ. P. 15(a) ............................................................................................ 43
Fed. R. Civ. P. 15(a)(2) ........................................................................................ 43
Fed. R. Civ. P. 15(d) ............................................................................................. 5

Fed. R. Civ. P. 17 ............................................................................. 38

Fed. R. Civ. P. 59(e), 60(b) ........................................................... 43

Regulations

42 C.F.R. § 422.100(j) ............................................................. 22, 24

42 C.F.R. § 423.104(d) ............................................................ 22, 24

42 C.F.R. § 423.120(c)(5)(iv), (c)(6)(ii) ................................ 22, 24

42 C.F.R. § 423.505(b)(20)–(21), (i)(3)(vi) ........................... 22, 24

42 C.F.R. § 423.120(b)(2)(i) ......................................................... 15

42 C.F.R. § 423.272 ...................................................................... 15

70 Fed. Reg. 70623-03 (Nov. 22, 2005) ...................................... 49

Other Authorities

115 Cong. Rec. 6994 (1969) ......................................................... 35

S. 2048, 90th Cong. (1st Sess. 1967) ........................................... 35

# JURISDICTIONAL STATEMENT

Jurisdiction in the district court was based on federal question jurisdiction under 28 U.S.C. § 1331, subject matter jurisdiction under 28 U.S.C. § 1332(a) and (d), and supplemental jurisdiction under 28 U.S.C. § 1368. The basis of this Court's jurisdiction is 28 U.S.C. § 1291. On March 24, 2023, the district court granted Defendants-Appellees' motions to dismiss and denied Plaintiffs-Appellants' motion for temporary restraining order and preliminary injunction. On April 21, 2023, Plaintiffs-Appellants filed a Motion to Alter or Amend Judgment or for Relief from Judgment, under Rules 59(e) and/or 60(b), which the district court denied on January 3, 2024. A timely notice of appeal was filed in the district court on January 5, 2024.

# STATEMENT OF ISSUES

1.      Whether the district court erred in dismissing Plaintiffs-Appellants' federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims.

2.      Whether the district court erred in dismissing Plaintiffs-Appellants' state law claims.

3.      Whether the district court abused its discretion in denying Plaintiffs-Appellants' motion for injunctive relief.

4.      Whether the district court abused its discretion in denying Plaintiffs-Appellants' motion to alter or amend judgment or for relief from judgment.

5.    Whether the district court abused its discretion in denying Plaintiffs-Appellants' request to amend the complaint.

## STATEMENT OF THE CASE

Specialty pharmaceutical manufacturers know that for every $100 they increase the price of their drug, patient copayments will increase by $20 to $25. They are also well aware that increased cost-sharing is associated with lower pharmaceutical adherence and increased prescription abandonment.[1] This cost-sharing structure exposes Medicare beneficiaries to the economic effects of drug pricing and is a Congressionally mandated safeguard against inflated drug prices.[2] These manufacturers have declared war on market safeguards, recruiting allies such as pricing consultants, "independent" charities, and specialty pharmacies.[3] Their artillery includes "donations" to the "independent" charities, false certifications to the OIG, and false certifications that the manufacturers' drugs are payable. The injuries complained of herein are the direct result of Defendants-Appellees' provision of copayment assistance, because without such provision, the health plans

---

[1] *See United States v. Regeneron Pharms., Inc.*, 2020 WL 7130004, at *2 (D. Mass. Dec. 4, 2020); [JA056].

[2] *See Pfizer, Inc., v. U.S. Dep't of Health & Hum. Servs.*, 42 F.4th 67, 71 (2nd Cir. 2022); *cert. denied sub nom. Pfizer Inc. v. Dep't of Health & Hum. Servs.*, 143 S. Ct. 626 (2023); *Pharm. Coal. for Patient Access v. United States*, 2024 WL 187707 at *2 (E.D. Va. Jan. 17, 2024).

[3] *See Regeneron Pharmaceuticals, Inc.*, 2020 WL 7130004, at *2–3.

would not have paid for the drugs.[4]

MSP Recovery Claims Series LLC; MSPA Claims I, LLC; MSP Recovery Claims Series 44, LLC, MSP Recovery Claims PROV, Series LLC, and MSP Recovery Claims CAID, Series LLC (collectively, "Plaintiffs-Appellants")—Assignees of Medicare Advantage and Medicaid health plans and other Medicare and Medicaid first-tier, downstream, and related entities—filed a class action complaint against (1) pharmaceutical manufacturer Lundbeck LLC; (2) specialty pharmacy TheraCom, LLC; and (3) two non-profit corporations, Caring Voice Coalition, Inc. ("CVC") and Adira Foundation (collectively, "Defendants-Appellees"). [*See* JA022]. Plaintiffs-Appellants raised (1) federal RICO claims pursuant to 18 U.S.C. § 1962(c) and (d), [*see* JA048–059]; (2) state consumer protection claims under the laws of eleven states and Puerto Rico,[5] [*see* JA078–092]; (3) unjust enrichment claims under the laws of eleven states and Puerto Rico,[6] [*see*

---

[4] *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1251 (9th Cir. 2019).

[5] Plaintiffs-Appellants' proposed First Amended Complaint ("FAC"), submitted alongside their motion to alter or amend judgment or relief from judgment, limits the state consumer protections claims to Connecticut, Florida, Illinois, Massachusetts, Michigan, New York, Ohio, and Wisconsin. [*See* JA401–411]. Thus, these are the only consumer protection statutes addressed herein.

[6] Similarly, in Plaintiffs-Appellants' proposed FAC, their unjust enrichment claims are brought under the laws of Connecticut, Florida, Illinois, Massachusetts, Michigan, New York, Ohio, and Wisconsin, which were included in the original Complaint, as well as Iowa, Rhode Island, and Texas. [*See* JA411–413]. Thus, these states' unjust enrichment laws are addressed herein.

JA092–094]; and (4) a Florida Civil Remedies for Criminal Practices claim ("Florida RICO"), [*see* JA095–099], against Defendant-Appellees for a conspiratorial scheme to defraud Plaintiffs-Appellants' Assignors into paying claims for supra-competitively priced and artificially inflated quantities of Xenazine, which were tainted by Defendants-Appellees' violations of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b.[7] [*See* JA022–026, JA035, JA049–060, JA069–078]. As part of this scheme to defraud, Defendant-Appellees used mail and wire to submit bribes and/or kickbacks, which in turn violated the Travel Act, as well as to facilitate the scheme to defraud. [*See* JA026, JA054, JA057–059, JA071–077]. Plaintiffs-Appellants also raised fraudulent transfer and successor liability claims against Defendants-Appellees CVC and Adira—CVC's successor which received CVC's assets in order to hinder, delay, and defraud Plaintiffs-Appellants. [*See* JA099–101].

All Defendants-Appellees, except CVC, filed motions to dismiss. [JA110–117]. Upon Plaintiffs-Appellants' request, the district court clerk entered default against CVC. [JA117]. Upon discovering that Adira intended to dissolve and transfer its assets just as its predecessor CVC had done, Plaintiffs-Appellants filed a motion

---

[7] As explained in briefing below (which the district court entirely ignored), because AKS compliance is a precondition for payment of every Medicare claim, Plaintiffs-Appellants' Assignors would not have paid any claims for Xenazine, which had been tainted by Defendants-Appellees' bribes, but for Defendants-Appellees concealing their scheme and "lulling" Assignors into believing they were legitimate. [*See* Doc. 52 at 30–32].

for a temporary restraining order ("TRO") and preliminary injunction against Adira to prevent its dissolution and transfer of assets. [JA137–210].

On January 17, 2023, the district court held a hearing on the motions to dismiss and TRO motion. After the hearing, Plaintiffs-Appellants filed a motion to supplement the Complaint, under Fed. R. Civ. P. 15(d), to add a paragraph and table to the Complaint setting out, based on limited documents provided by CVC under a settlement agreement, allegations of payments Plaintiffs-Appellants' Assignors made for Xenazine directly to TheraCom for beneficiaries that received co-payment assistance from CVC. [JA213–236].

On March 24, 2023, the district court granted Defendants-Appellees' motions to dismiss, granted Plaintiffs-Appellants' Rule 15(d) motion, and denied Plaintiffs-Appellants' motion for a TRO and preliminary injunction. [JA237–282]. The district court found that Plaintiffs-Appellants failed to sufficiently plead proximate cause to support their federal RICO claims, state consumer protection claims, and Florida RICO claim.[8] [JA260–274]. The district court also found that Plaintiffs-Appellants failed to allege an independent and viable unjust enrichment claim and that, considering their underlying claims were not viable, Plaintiffs-Appellants' fraudulent transfer and successor liability claims failed. [JA272–275]. The district

[8] The district court ultimately found that dismissal was warranted on proximate cause grounds, though it reflected, in dicta, that it was "persuaded" that the Indirect Purchaser Rule ("IPR") should apply. [JA254–256].

court found that an injunction was not warranted, as Plaintiffs-Appellants could not succeed on the merits of their claims. [JA275].

On April 21, 2023, Plaintiffs-Appellants' filed a motion to alter or amend judgment or for relief from judgment and sought leave to amend the complaint. [JA283–428]. On January 3, 2024, the district court denied Plaintiffs-Appellants' motion and request to amend. [JA439–441]. The district court found that Plaintiffs-Appellants failed to allege proximate cause because they were indirect purchasers, and the alleged causal chain was too far attenuated. [JA436]. The district court also found that it believed that the IPR barred Plaintiffs-Appellants' claims. [JA437–440].

## SUMMARY OF THE ARGUMENT

The district court erred in dismissing Plaintiffs-Appellants' federal RICO claims based on proximate cause because it relied on inapposite caselaw to misapply the RICO proximate cause standard, engaged in a premature damages analysis, and misunderstood the factual allegations and construed them against Plaintiffs-Appellants. The district court also erred in dismissing Plaintiffs-Appellants' state law consumer protection and Florida RICO claims based on proximate cause because it erroneously applied the RICO proximate cause standard to those claims. Next, the district court erred in finding that Plaintiffs-Appellants were required to allege an independent and viable unjust enrichment claim. Moreover, the district

court erred in dismissing Plaintiff-Appellants' fraudulent transfer and successor liability claims, as their underlying claims against CVC and Adira were indeed viable. As a result, the district court abused its discretion in denying Plaintiffs-Appellants' motion for a temporary restraining order and preliminary injunction, as Plaintiffs-Appellants would have succeeded on the merits but for the district court's errors.

Additionally, the district court abused its discretion in denying Plaintiffs-Appellants' motion to alter or amend judgment or for relief from judgment based on the IPR because the IPR does not apply to RICO and, regardless, the IPR is inapplicable in this case. The district court also abused its discretion in denying Plaintiffs-Appellants' request to amend the complaint, as it entirely failed to consider whether amendment would be futile or otherwise improper, as required under this Court's binding case law.

## ARGUMENT

### I.    STANDARD OF REVIEW

This Court reviews *de novo* the district court's grant of a motion to dismiss. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). When ruling on a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive the motion, a complaint must contain sufficient

facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted). Further, "like the district court, [this Court] draw[s] all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

A denial of a TRO and/or preliminary injunction is reviewed for abuse of discretion. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002). This Court also reviews a district court's denial of a motion to alter or amend a judgment under an abuse-of-discretion standard. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 653 (4th Cir. 2002). Additionally, this Court reviews the district court's ruling on a Rule 60(b) motion for abuse of discretion. *See Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011). And this Court reviews the district court's denial of the motion to amend a complaint for an abuse of discretion. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citing *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006)). Under this standard, this Court "review[s] the district court's factual findings for clear error and review[s] its legal conclusions *de novo*." *Di Biase v. SPX Corp.*, 872 F.3d 224, 229 (4th Cir. 2017) (internal quotation marks omitted).

## II. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF-APPELLANTS' FEDERAL RICO CLAIMS

This district erred in finding that Plaintiffs-Appellants failed to sufficiently allege proximate cause for several reasons. [*See* JA260–270]. First, this district court's reliance on *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, 2022 WL 3155035 (S.D. Fla. July 21, 2022) *report and recommendation adopted*, 2022 WL 4448256 (S.D. Fla. Sept. 23, 2022) ("*CVC*"), and *Ironworkers Loc. 68 v. AstraZeneca Pharms.*, 634 F.3d 1352 (11th Cir. 2011) ("*Ironworkers*"), was misplaced. Second, the district court's reliance on other authority was equally misplaced. Third, the district court's foray into the issue of damages was premature. Fourth, the district court erred by failing to construe certain factual allegations, which it clearly misunderstood, in the Complaint in Plaintiffs-Appellants' favor.

### A. The District Court's Reliance on *CVC* and *Ironworkers* Was Erroneous

First, the district court's reliance on *CVC* and *Ironworkers* was erroneous. [*See* JA264–270]. As an initial matter, the district court in *CVC* dismissed the plaintiffs' claims *without prejudice* and granted leave to amend, which the plaintiffs did. *See CVC*, 2022 WL 4448256, at *1; [CM/ECF for S.D. Fla., No. 1:21-cv-21317, Docs. 176, 178]. Now, motion-to-dismiss briefing has begun anew as to a wholly new complaint that cured alleged deficiencies addressed by the magistrate judge and district court. Regardless, it is notable that the *CVC* Court adopted the magistrate

judge's finding that the IPR <u>did not apply</u> to plaintiffs' RICO claims. *See CVC*, 2022 WL 3155035, at *12 n.3.[9]

Next, the district court's reliance on *Ironworkers*, upon which *CVC* extensively relied, was also erroneous. For one, *Ironworkers* was not decided on proximate cause grounds at all but on whether the plaintiffs had suffered an economic injury. *See Ironworkers*, 634 F.3d at 1360–69 (explicitly rejecting the lower court's holding that causation was lacking). Additionally, the assumption-of-risk analysis in *Ironworkers*, which the district court and the *CVC* Court referenced, [*see* JA269]; *CVC*, 2022 WL 3155035, at *11, is both wholly inapplicable to Medicare Part D plans and has been soundly rejected by numerous courts across the country. *See, e.g., In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 641 (3d Cir. 2015); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 159 F. Supp. 3d 898, 920 (N.D. Ill. 2016); *In re*

_____

[9] Specifically, the magistrate judge found the following:

> [T]he Court does not find UT's arguments concerning the Indirect Purchaser Rule . . . persuasive. . . . RICO statutory law was heavily influenced by statutory antitrust law, . . . but that does not indefinitely preclude indirect purchasers from suing under RICO laws. . . . Although RICO jurisprudence prioritizes directness, . . . that does not mean every RICO case should follow a "bright-line" rule precluding indirect purchasers from suing antitrust violators.

2022 WL 3155035, at *12 n.3. Ironically, despite the district court's repeated adherence to the *CVC* opinion, the district court ultimately (and erroneously) diverted from it on this point, [JA437–440], as discussed below.

*Neurontin Mktg. & Sales Pracs. Litig.*, 799 F. Supp. 2d 110, 120 (D. Mass. 2011); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at \*22 n.32 (N.D. Cal. Feb. 21, 2017) (collecting cases); *Humana Inc. v. Mallinckrodt ARD LLC*, 2020 WL 3041309, at \*15 (C.D. Cal. Mar. 9, 2020); *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 794 n.19 (N.D. Ohio 2020); *State Farm Mut. Auto. Ins. Co. v. Kugler*, 2011 WL 4389915, at \*8–10 (S.D. Fla. Sept. 21, 2011).

By contrast, several Circuits have found, in similar RICO cases against drug manufacturers, that the presence of physicians and patients does not undermine proximate causation. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d at 643–44; *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 38–40 (1st Cir. 2013); *see also Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 442–43 (D. Md. 2020) (adopting approach of the First and Third Circuits).[10]

Additionally, *Ironworkers* is distinguishable on multiple fronts. Unlike in *Ironworkers*, physicians are *required* to consider cost when prescribing medication

---

[10] Notably, the Supreme Court has determined that proximate causation and issues of intervening or superseding causes in general are best left for the jury to decide. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840–41 (1996) ("The issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder."); *see also In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d at 39 ("The fact that some physicians may have considered [other] factors . . . in making their prescribing decisions does not add such attenuation to the causal chain as to eliminate proximate cause. . . . [T]his argument presents a question of proof regarding the total number of prescriptions that were attributable to Pfizer's actions. This is a damages question."). Thus, the district court should have left the proximate cause question here for the jury.

*to Medicare beneficiaries*, *see* 42 U.S.C. § 1320c-5(a)(1) ("It shall be the obligation of any health care practitioner . . . to assure . . . that services or items ordered or provided . . . to beneficiaries . . . will be provided economically[.]"),[11] and Defendants-Appellees' co-payment scheme provided a cost-free option to the beneficiary, thereby inducing increased prescription. [*See, e.g.,* JA048–049 ("[P]atients may be urged to seek, and physicians may be more likely to prescribe, a more expensive drug if co-payment assistance is available for that drug *but not for less expensive but therapeutically equivalent alternatives*." (emphasis added))].

Regardless, the focus on physician discretion misses the mark entirely. Plaintiffs-Appellants' Complaint makes clear that, independent of any influence the scheme had on the *prescribing* of Xenazine, it undoubtedly influenced the *dispensing* of Xenazine. Plaintiffs-Appellants repeatedly alleged that the scheme allowed Defendants-Appellees "to artificially increase the quantity of Xenazine prescriptions *dispensed*." [JA050]. They achieved this by "funnel[ing] . . . patients prescribed Xenazine to CVC," then used Lundbeck's money to pay the "patients'

---

[11] S*ee also* 42 U.S.C. § 1320a-7(b)(6)(B) (prohibiting bills that are "substantially in excess of the needs of such patients."). Courts have upheld False Claims Act ("FCA") lawsuits predicated on a violation of this obligation. *See, e.g., U.S. ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Supp. 2d 35, 42–43 (D. Mass. 2000) (defendant laboratory's tests were not conducted economically in violation of § 1320c-5(a)(1)); *U.S. ex rel. Aranda v. Cmty. Psychiatric Ctrs.,* 945 F. Supp. 1485, 1488 (W.D. Okla. 1996) (dismissal denied where hospital allegedly violated §§ 1320c-5 and 1320a-7(b)(6)(B)).

co-payments." [JA055]. This is the direct result of the alleged harm because claims for Xenazine were submitted at the dispensing stage, not the prescribing stage and "if a patient does not provide their cost sharing obligations (e.g., copay), a prescription will not be dispensed from a pharmacy." [JA024]. Physicians prescribing Xenazine is not an <u>intervening</u> act at all. It is a proceeding event that merely defined the scope of Defendants-Appellees' scheme—that is, they targeted patients prescribed Xenazine—much like a patient needing treatment for chorea is a proceeding, not intervening event. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d at 643–44; *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d at 38–40; *Starr*, 509 F. Supp. 3d at 442–43.

Importantly, it is widely understood that high co-pay costs can and do cause patients to abandon prescriptions or otherwise deviate from their prescribed treatment regimen. [JA056]. Thus, to sustain supra-competitive prices without the consequences of market forces (i.e., prescription abandonment), Defendants-Appellees illegally funneled money to patients who were prescribed Xenazine.

The differences between this case and *Ironworkers* continue. While the physicians in *Ironworkers* were prescribing Seroquel off-label to treat dozens of unique mental health disorders, Xenazine was being used exclusively to treat chorea. [*See* JA022, JA050, JA052, JA054]. Treating "mental health disorders [is] an extremely individualized process", which makes physician discretion paramount.

*Ironworkers*, 634 F.3d at 1363 (quotation omitted). As chorea is not a mental health disorder, that is not the case here, and the assumption of an "extremely individualized process" is misplaced.

Further, the Eleventh Circuit held that the *Ironworkers* plaintiffs were not injured because they assumed the risk of fraud and could have (1) adjusted premiums upwards to account for fraud, *see id.* at 1364–65; (2) implemented safeguards through pre-authorization or limiting coverage to on-label use, *see id.* at 1366–67; and/or (3) removed Seroquel from their formularies entirely, *see id.* at 1366. But, in the present case, these three measures were either unavailable to Assignors or would have offered no protection from Defendants-Appellees' fraud; Plaintiffs-Appellants address each of these measures in turn.

First, the *Ironworkers* Court assumed that plaintiff utilized the "insurance industry's conventional ratemaking procedures" because they pleaded no facts to suggest otherwise. *Id.* at 1368. That is not the case here. The Assignors follow a specific ratemaking process, established by federal law, and governed by CMS, which severely diverges from conventional ratemaking. [*See* JA036–037]. Each plan sponsor must submit a bid to CMS a year before it endeavors to deliver Part D benefits. [*See id*.]. This bid must contain a per member, per month cost estimate for an average Medicare beneficiary in the region. [*See id*.]. CMS then sets the rate that sponsors will receive for the next year. [*See id*.]. This is a fundamentally different

process than what *Ironworkers* was considering, thus requiring a distinct analysis. Further, district courts within the Eleventh Circuit have refused to apply a "pass on" defense after analyzing *Ironworkers*. *See, e.g., Kugler*, 2011 WL 4389915 at *8 ("[T]here is no more directly injured party" than the insurer who paid for fraudulent medical bills.). This pass on defense has even been rejected by the Supreme Court. *See Hanover Shoe Inc., v. United Shoe Machinery Corp.*, 392 U.S. 481, 492 (1968). The uncontested facts and law make it clear that the Assignors were directly injured by Defendants-Appellees' enterprise.

Second, *Ironworkers* reasoned that plaintiff could have removed Seroquel from their formularies, thereby obviating their obligation to pay. 634 F.3d at 1366. The Assignors did not have this option. Unlike the plaintiff in *Ironworkers,* the Assignors' formularies must "include within each therapeutic category and class of Part D drugs at least two Part D drugs that are not therapeutically equivalent and bioequivalent." 42 C.F.R. §§ 423.120(b)(2)(i). Additionally, the Assignors cannot use formularies that "are likely to substantially discourage enrollment by certain Part D eligible individuals." 42 C.F.R. § 423.272. There has been no finding nor argument that the Assignors could have removed Xenazine from their formularies.

Third, *Ironworkers* suggests that insurers can protect against fraud by implementing pre-authorization protocols. 634 F.3d at 1366–67. Assuming, *arguendo*, that the Assignors could use such measures, these tools would offer no

protection from the fraud committed by Defendants-Appellees. Unlike *Ironworkers,* the issue here is not whether Xenazine was being prescribed for medically unnecessary reasons, i.e., off-label use; rather, the issues are whether Defendants-Appellees' conduct caused Assignors to make payments for over-priced claims for Xenazine tainted by Defendants-Appellees' fraud and induced additional *dispensing* of Xenazine. [*See* JA022–026, JA035, JA049–060, JA069–078]. Unlike the circumstances in *Ironworkers*, the Assignors here had no way of avoiding the injuries caused by Defendants-Appellees.

Thus, *Ironworkers* is wholly inapposite to the case at hand. Accordingly, the district court's reliance on *CVC* and *Ironworkers* was erroneous.

## B. The District Court's Reliance on Other Authority Was Also Misplaced

The "[o]ther cases" upon which the district court relied fare no better. [*See* JA268]. First, the district court's finding in *MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, 2022 WL 17220647, at *1 (C.D. Cal. Oct. 20, 2022), did not involve proximate cause at all. And unlike the *Avanir* plaintiff, Plaintiff-Appellants here allege that Defendants-Appellees' conduct violated the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, which in turn, violated the Travel Act, a proper RICO predicate. [*See* JA026, JA071, JA073–074, JA077]; 18 U.S.C.

§§ 1952, 1961(1). Thus, *Avanir* is wholly inapposite.[12]

As for *UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010), and *Sidney Hillman Health Ctr. v. Abbott Labs.*, 813 F.3d 574 (7th Cir. 2017), the Ninth Circuit and at least one district court in this Circuit have declined to follow the approaches of the Second and Seventh Circuit in favor of the First and Third Circuits discussed above. *See Painters*, 943 F.3d at 1252–59 (citing *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d at 634–46; *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d at 25–40); *Starr*, 509 F. Supp. 3d at 442–43 (rejecting approach of the Second and Seventh Circuits). In the absence of binding Fourth Circuit case law, this Court should follow the First, Third, and Ninth Circuits.

Further, the district court's reliance on *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), which was cited in *CVC*, to suggest that the only direct victim was the Government was also erroneous. [*See* JA279]. In *Anza*, the Supreme Court considered whether a steel supplier's failure to charge and remit sales taxes to the State proximately caused an injury to its competitor for undercutting the

_____

[12] In his order denying Plaintiff-Appellants' motion to alter or amend judgment or relief from judgment, the district court noted that the *Avanir* Court had subsequently dismissed with prejudice. [*See* JA436–437 (citing *MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, 2023 WL 4162338, at *6 (C.D. Cal. May 19, 2023))]. However, the district court inexplicably missed the point; the subsequent *Avanir* decision was also <u>not</u> decided on proximate cause grounds and involved radically different RICO allegations, involving misleading statements to the public and kickbacks to providers for off-label use. *See Avanir*, 2023 WL 4162338, at *1. Thus, neither *Avanir* decision is applicable here.

competitor's prices. 547 U.S. at 458. The Supreme Court held that the link between the fraud alleged and the injury suffered was too "attenuated" because the "direct victim of this conduct" was the State of New York and the supplier's "actions (offering lower prices) [were] entirely distinct from the alleged RICO violation (defrauding the State)." *Id*. at 458–61.[13] However, the RICO allegations here are entirely distinguishable from those at issue in *Anza* and are more akin to those in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). In *Bridge*, the Supreme Court held that plaintiffs' injury "was a foreseeable and natural consequence of [defendants'] scheme . . . [and] unlike in [*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992)] and *Anza*, there are no independent factors that account for [plaintiffs'] injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue." 533 U.S. at 658.[14]

As this Court has recently held, when "Plaintiffs allege a RICO-violating

---

[13] he *Anza* plaintiff alleged that defendants' evasion of state income tax harmed plaintiff in two ways: (1) by undercutting plaintiff's prices; and (2) by investing their illegal profits to open a competing business. *See Anza*, 547 U.S. at 454–55. While the Supreme Court dismissed the first count, it remanded the second count, *see Anza*, 547 U.S. at 461–62, and the Second Circuit held that proximate cause <u>was established</u> on this second injury claim notwithstanding the more direct harm to the government. *See Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011).

[14] If anything, as it relates to claims for Xenazine paid by Plaintiffs-Appellants' Assignors, the Government's harm is derivative of Assignor's injuries, which puts the Government in similar shoes as the plaintiff in *Holmes*. *See* 503 U.S. at 271.

scheme that first required Defendants to trick government entities, which led to their own independent injuries," this is sufficient to establish "that the plaintiffs' injuries were the 'direct result' of the defendants' scheme." *Alberts v. Glob. Tel\*Link*, 68 F.4th 906, 913 (4th Cir. 2023) (citing *Bridge*, 553 U.S. at 658). In other words, "[w]hile the alleged misrepresentations to the governments happened before Plaintiffs' payment of inflated prices, *Bridge* illustrates that this doesn't make the governments more direct victims. . . . So Plaintiffs' injuries aren't derivative of those suffered by the governments. Rather, Plaintiffs and the governments *are both direct victims*." *Id*. (emphasis added).

Here, Plaintiffs-Appellants are not alleging, as the plaintiff did in *Anza*, that Defendants-Appellees are Plaintiffs-Appellants' Assignors' competitors who defrauded the Government by failing to remit taxes and thereby somehow injuring Assignors. Instead, Plaintiffs-Appellants are alleging that their Assignors are the direct victims of the Defendants-Appellees' scheme by causing Assignors to pay more for Xenazine by specifically targeting them as Medicare Advantage and related entities. [*See* JA022–024, JA026, JA035, JA049, JA054–055, JA057, JA064, JA073–074]. Assignors received claims for payment directly from TheraCom and issued payments directly to TheraCom.[15] [*See* JA214, JA216, JA218, JA222–236].

---

[15] As well as other specialty pharmacies, including those identified in the proposed FAC. [*See* JA316, JA323, JA333].

The Government has no intermediary role or involvement between the Assignors and specialty pharmacies. And Defendants-Appellees' conduct of using mail and wires to submit bribes and/or kickbacks in the form of "donations," to make false certifications to the Government, and to transmit patient data to each other was part and parcel to their scheme to increase purchases of AKS-tainted Xenazine by Assignors at supra-competitive prices. [*See* JA023, JA026, JA048, JA052–055, JA057–059, JA069–078]. In other words, "[u]nlike *Anza* and *Hemi Group*, the alleged RICO violation, (misrepresentations to the [Government], via mail and wire communications)", as well as the transmission of bribes and other use of mail and wire to further the scheme to defraud, "and the cause of Plaintiffs' injuries (charging inflated prices)", as well is artificially over-inducing and tainting claims for Xenazine, "were both committed by the same parties—Defendants." *Albert*, 68 F.4th at 913.

It is of no moment that the Government reached a settlement with Defendants-Appellees for similar conduct under the FCA, especially considering the settlement between the Government and Defendants-Appellees was "intended to be for the benefit of the Parties *only*."[16] [Doc. 1-2 at 9 (emphasis added)]. The Government does not directly provide, and never has directly provided, Part D prescription drug benefits, but instead had its own independent basis for its claims against Defendants-

---

[16] Parties" are defined as the United States and Lundbeck LLC only. [Doc. 1-2 at 1].

Appellees. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) ("The [FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)). Thus, the Government's "slice of the pie . . . differ[ed] from that owed to Plaintiffs." *Albert*, 68 F. 4th 914.

Accordingly, Assignors' injuries were "a foreseeable and natural consequence" of Defendants-Appellees' scheme, and there are "no more immediate victim[s] . . . better situated to sue." *Bridge*, 533 U.S. at 658. Thus, none of the other cases the district court relied upon supports its proximate cause finding, whereas *Albert* reinforces that Defendants-Appellees proximately caused injury to Plaintiffs-Appellants' Assignors.

## C. The District Court's Damages Analysis Was Premature

The district court erred in engaging in a damages analysis at the pleading stage. The district court found, without any citation to authority, that the "impossibility of calculating damages between Assignors who paid directly for Xenazine or simply reimbursed PAPs, like CVC," undermined proximate cause and that it was "left to speculate as to the portion of increased costs due to Defendants-Appellees' alleged fraudulent activity and how it disproportionately affected Assignors." [JA269]. As an initial matter, the District Court erred with the facts,

Assignors do not "reimburse" patient assistance programs ("PAPs"). Instead, Assignors directly pay, or "reimburse,"[17] <u>pharmacies</u>, including specialty pharmacies like TheraCom, for the cost of a Medicare beneficiary's prescription, while the PAPs only cover the cost of the required co-payment. *See, e.g.,* 42 U.S.C. §§ 1395w-27(f)(3), 1395w-102(b), 1395w-112(b)(4)–(6); 42 C.F.R. §§ 422.100(j), 423.104(d), 423.120(c)(5)(iv), (c)(6)(ii), 423.505(b)(20)–(21), (i)(3)(vi). In both instances, payment is made directly <u>to the specialty pharmacies</u> (e.g., TheraCom)— payment is made by CVC to TheraCom to cover the co-payment with Lundbeck's funds, and payment is made directly by the Assignors to TheraCom for the price of Xenazine. Under these circumstances, nothing is paid by the beneficiaries, and thus, there is nothing to "reimburse", as the district court suggested.

At any rate, the district court's damages analysis was premature and erroneous. This Court has determined that "such damage-calculation hurdles present questions of fact that can't be resolved at the pleading stage." *Albert*, 68 F.4th 914 (citing *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 303 (3d Cir. 2020); *Painters*, 943 F.3d at 1251).[18] Plus, any concerns surrounding

---

[17] In this context, reimbursement is a technical term used to describe the payment made directly from the Assignors to the pharmacies. Assignors "reimburse" the pharmacies for the cost of the medication and service provided (i.e., dispensing fee). However, this is a direct and contemporaneous payment for the product, and it was erroneous to assume or interpret this payment as an indirect, post-hoc payment.

[18] What's more, many courts have found that the damages calculation is not

duplicative recovery of damages are not implicated, here, where there is only one set of injured parties: Assignors. Plaintiffs-Appellants did not allege, and Defendants-Appellees have never suggested, that patients or physicians (or anyone else for that matter) were injured by the increased prices of Xenazine, the induced over-dispensing of Xenazine, and the tainting of Xenazine claims from AKS violations. Thus, the district court's damages analysis was premature and erroneous.

### D. This District Court Erred by Failing to Construe Certain Allegations in Plaintiffs-Appellants' Favor

The district court erred because it failed to properly construe certain allegations in the Complaint in Plaintiffs-Appellants' favor. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

---

determinative of proximate cause at all. *See, e.g., In re Am. Honda Motor Co., Inc. Dealerships Rels. Litig.*, 941 F. Supp. 528, 544 (D. Md. 1996) ("If plaintiffs have alleged a sufficiently direct injury resulting from the bribery scheme, they have satisfied the proximate causation requirement, difficulties of quantification and allocation notwithstanding."); *Faith Enters. Grp., Inc. v. Avis Budget Grp., Inc.*, 2012 WL 1409403, at *4 (N.D. Ga. Apr. 20, 2012) ("[T]he potential difficulty of calculating damages is not determinative of the proximate causation inquiry."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 904–05 (N.D. Cal. 2018) ("Plaintiffs do not need to identify 'the amount of damage' so long as 'the fact of damage' is based on a plausible theory." (citation omitted)).

For example, the district court's finding, without citation to the Complaint, that "[t]he Complaint alleges that this fraudulent conduct influenced more Assignors and Medicare insurers *to aid CVC and enrollees with co-payments or similar reimbursements* tied to Xenazine" is factually incorrect and misconstrues Plaintiffs-Appellants' allegation. [JA267 (emphasis added)]. Similarly, the district court misconstrued Plaintiffs-Appellants' allegations by stating that Assignors "simply reimbursed PAPs, like CVC." [JA269]. Both of these statements are simply incorrect. As discussed above, Assignors pay pharmacies, including TheraCom directly, for the cost of Xenazine, while the PAPs only cover the cost of the required co-payments or coinsurance by submitting payments *to the specialty pharmacies* using alleged "donations" from manufacturers. *See, e.g.,* 42 U.S.C. §§ 1395w-27(f)(3), 1395w-102(b), 1395w-112(b)(4)–(6); 42 C.F.R. §§ 422.100(j), 423.104(d), 423.120(c)(5)(iv), (c)(6)(ii), 423.505(b)(20)–(21), (i)(3)(vi). The district court misconstrued Plaintiffs-Appellants' allegations to that effect. [*See, e.g.,* JA026, JA031, JA033, JA035–038, JA054–057, JA072–073]. Plaintiffs-Appellants have never alleged that Assignors "aid[ed]" CVC and enrollees with co-payments or that the co-payments are in any way "similar" to Assignors' "reimbursements" for Xenazine, *i.e.*, the payments made by Assignors for the *dispensing of* Xenazine by the specialty pharmacies (including the co-conspiring TheraCom) to their beneficiaries.

Moreover, the district court's observation that "[p]hysicians may have increased their prescription rates *for other easily inferable reasons*" is very clearly a construal of the factual allegations and reasonable inferences derived therefrom *against* Plaintiffs-Appellants. [JA268 (emphasis added)]; *see Ibarra*, 120 F.3d at 474.[19] Additionally, the district court's observation that Defendants-Appellees' conduct "took place before generic drug competition," [JA269], is irrelevant given the existence of cheaper alternative therapies. As Plaintiffs-Appellants alleged, Defendants-Appellees used the copayment scheme to ensure that Xenazine was dispensed over alternative therapies. [JA023, JA035, JA041, JA048–049]. And this says nothing about Plaintiffs-Appellants' other damage theories: that the scheme (1) allowed Lundbeck to charge supra-competitive prices by eliminating price sensitivity by nullifying Congressionally mandated cost controls (*i.e.* copayments); (2) avoid prescription abandonment because of these high prices; and (3) submitting bills for legally unpayable and tainted claims. Accordingly, the district court erred

---

[19] Moreover, by speculating beyond Plaintiffs-Appellants' theory of proximate causation, this Court clearly erred in its proximate cause analysis at the pleading stage. *See, e.g., In re Volkswagen AG Sec. Litig.,* 2023 WL 2505539, at *26 (E.D. Va. Mar. 14, 2023) (At the pleading stage, "other inferable reasons" or potential "intervening factors" shall not be used to "undercut" the plaintiff's alleged theory of causation.); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 535 (D.N.J. 2004) ("Defendants have attempted to argue that Plaintiffs must allege (or dispose of) all alternative theories of causation to survive a motion to dismiss. This is not true at the pleading stage. Plaintiffs are simply required to allege facts showing that they suffered . . . injury or harm . . . , and that their injury flows from the Defendants' . . . conduct.").

by failing to properly construe the allegations in the Complaint in Plaintiffs-Appellants' favor.

## III. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF-APPELLANTS' STATE LAW CLAIMS

Because the district court premised its dismissal of Plaintiffs-Appellants' state law consumer protection and Florida RICO claims on its finding that Plaintiffs-Appellants failed to sufficiently allege proximate cause in their federal RICO claims, [*see* JA272–275], the district court clearly erred in dismissing those claims, for the reasons outlined above. As such, Plaintiff-Appellants also alleged viable underlying federal RICO and state law claims to support their fraudulent transfer and successor liability claims.

The district court erroneously assumed that the proximate cause standards for each state consumer protection statute was identical to the federal RICO standard. However, they are not. *See In re Actimmune Mktg., Litig*., 614 F. Supp. 2d 1037, 1053 (N.D. Cal. 2009) ("The legal standard of proximate cause that is relevant to consumer protection claims . . . is not the law of RICO."). Rather, many of these statutes (most of which contain harmonization provisions)[20] follow the "FTC Act's

---

[20] As relevant here, these are: Conn. Gen. Stat. § 42-110b(b); Fla. Stat. § 501.204(2); Ill. Comp. Stat. § 505/2; Mass. Gen. Laws ch. 93A, § 2(b); Mich. Comp. Laws § 445.911(3)(c); and Ohio Rev. Code Ann. § 1345.02(c). In New York, courts have found interpretations of Section 5 of the Federal Trade Commission Act ("FTC Act") especially persuasive in construing their respective consumer protection statutes.

'more relaxed' 'likely to' causation standard." *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1152 (N.D. Cal. 2017). As these "harmonization provisions" are, in essence, "legislative[s] mandate that the statutes be interpreted in accordance with the FTC Act", the district court's application of federal RICO standards on state consumer protection law further runs afoul of federalism concerns. *Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 633 (N.D. Cal. 2020); *First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 22 n.14 (D.D.C. 1998) ("[F]ederal limits cannot be imposed reflexively on state law claims, and examination of relevant precedent is required."). Consequently, the district court's application of the RICO proximate cause standard was problematic, as "the proximate cause requirements of RICO are more stringent than those of most states." *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 348 (2d Cir 2003).

Likewise, relevant case law demonstrates the proximate cause threshold for Plaintiff-Appellants' state law consumer protection claims is less than that of RICO.[21] And in many states, proximate cause under their respective consumer

---

*See, e.g., Braynina v. TJX Companies, Inc.*, 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016).

[21] *See, e.g., Stevenson Lumber Co., Suffield v. Chase Assocs., Inc.*, 932 A.2d 401, 406–07 (Conn. 2007) (under CUTPA, "The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by defendant's act."); *See In re Nat'l*

protection statutes is generally a factual question typically left to the jury. *See, e.g.,*
*Abrahams v. Young & Rubicam, Inc.*, 692 A.2d 709, 712 (Conn. 1997); *Nature's*
*Prod., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1322 (S.D. Fla. 2013); *Connick*,
675 N.E.2d at 595; *Casavant v. Norwegian Cruise Line Ltd.*, 952 N.E.2d 908, 912
(Mass. 2011); *Novell v. Migliaccio*, 749 N.W.2d 544, 553 (Wis. 2008). Thus, the
district court's cursory treatment of Plaintiffs-Appellants' state law consumer
protection claims was legally erroneous.

Moreover, the district court erred in finding that Plaintiffs-Appellants failed
"to allege an independent and viable unjust enrichment claim" because (1) Plaintiffs-
Appellants rely only on Defendants-Appellees' misconduct as the generic basis for

---

*Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 781 (N.D. Oh. 2020) ("To prove the
causation element of a consumer claim under FDUTPA, [Plaintiff] must show that
'the practice was likely to deceive a consumer acting reasonably in the same
circumstances.'" (quoting *Office of Att. Gen. v. Bilotti*, 267 So.3d 1, 3 (Fla. Dist. Ct.
App. 2019))); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996)
(Applying Illinois law, "[T]he required allegation of proximate cause is minimal");
*Peckham v. Cont'l Cas. Ins. Co.*, 895 F. 2d 830, 836-37 (1st Cir. 1990) (Applying
Massachusetts law, "[t]he touchstone [of proximate cause] is foreseeability: the
conduct results in liability if, and to the extent, a foreseeable risk of harm
materializes."); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 541 (C.D. Cal.
2012) (explaining proximate cause under the New York Deceptive Trade Practices
Law); *Aiken v. Indus. Comm'n*, 53 N.E.2d 1018, 1020 (Ohio 1944) (Applying Ohio
law, "the proximate cause of an event is that which is a natural and continuous
sequence, produces that event and without which that event would not have
occurred."); *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 663 (W.D.
Wis. 2009) ("[T]o satisfy the element of causation for a claim under §100.18", the
plaintiff must show "the representation . . . materially induced the plaintiff's
decisions to act…").

their unjust enrichment claim and (2) there existed contracts between Assignors and patients or the Government. [JA272–273]. As an initial matter, the district court's first reason for dismissing Plaintiffs-Appellants' unjust enrichment claim is primarily based on a citation to the report and recommendation in *CVC*, which was premised on different allegations that have since been cured through amendment, as discussed above. At any rate, the district court's only other citation (upon which the *CVC* Court also relied) is to *State, Off. Of Atty. Gen., Dep't of Legal Affs. v. Tenet Healthcare Corp.,* 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005), which only applied Eleventh Circuit caselaw to a Florida unjust enrichment claim and involved <u>none</u> of the other states listed in Count IV.[22]

By contrast, federal courts in this Circuit and elsewhere have permitted plaintiffs to plead unjust enrichment claims (including under Florida law) alongside their RICO claims. *See, e.g., Starr*, 509 F. Supp. 3d at 459 (permitting unjust enrichment claims under the laws of *inter alia* Illinois and Texas); *Fitzgerald v. Wildcat*, 2023 WL 5345302, at *21 (W.D. Va. Aug. 18, 2023) (same for Florida);

---

[22] Notably, the Eleventh Circuit caselaw cited in *Tenet Healthcare Corp.* relies on only one authority—a single law journal article that makes no reference to the laws of <u>any</u> of the states at issue here, including Florida—to suggest that an unjust enrichment claim must be independent of other alleged wrongs. *See Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003) (citing Peter Birks, *Unjust Enrichment and Wrongful Enrichment*, 79 Texas L. Rev. 1767, 1789 (2001)); *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003) (same). This Court should not follow the same path on such paltry authority.

*Duggan v. Martorello*, 596 F. Supp. 3d 158, 194–95 (D. Mass. 2022) (same for Massachusetts); *In re Nat'l Prescription Opiate Litig.*, 458 F. Supp. 3d 665, 694–96 (N.D. Ohio 2020) (same for Michigan); *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 310 (E.D.N.Y. 2017) (same for New York against two defendants).[23]

As to the district court's second reason for dismissing Plaintiffs-Appellants' unjust enrichment claims, the sole authority on which the district court relied, *Delta Envtl. Consultants, Inc. v. Wysong & Miles Co.*, 510 S.E.2d 690, 694 (N.C. Ct. App. 1999), undermines its own findings. The district court observed that "unjust enrichment is improper" when "there is a contract *between the parties* [and] the contract governs the claim." [JA072 (quotation omitted) (emphasis added)].[24] Yet the district court found that Assignors' Xenazine payments "were all made pursuant

_____

[23] *See also Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 545 (S.D. Iowa 2007) (permitting unjust enrichment claim under Iowa against one defendant).

[24] This is essentially the same general rule applied in the states listed in Count IV. *See, e.g., Conn. Light & Power Co. v. Proctor*, 118 A.3d 702, 705 n.7 (Conn. App. Ct. 2015); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011); *Illinois ex rel. Hammer v. Twin Rivers Ins. Co.*, 2017 WL 2880899, at *10 (N.D. Ill. July 5, 2017); *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, 140 F. Supp. 3d 138, 140 (D. Mass. 2015); *Glob. Crossing Telecomms., Inc. v. Mich. Bell Tel. Co.*, 2010 WL 2011502, at *5 (E.D. Mich. May 17, 2010); *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 682 (S.D.N.Y. 2015); *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.,* 796 F. Supp. 1078, 1086 (S.D. Ohio 1992); *Cont'l Cas. Co. v. Wis. Patients Comp. Fund,* 473 N.W.2d 584, 587 (Wis. 1991). The same general rule also applies under Iowa, Rhode Island, and Texas law. *See, e.g., Meardon v. Reg.*, 994 F.3d 927, 936 (8th Cir. 2021); *Wild Horse Concepts, LLC v. Hasbro, Inc.*, 286 A.3d 848, 852 (R.I. 2023); *O'Kane v. Sembritzky*, 2020 WL 4604500, at *11 (S.D. Tex. Aug. 11, 2020).

to a contract *with the patient or the government*," [JA273 (emphasis added)], <u>not</u> <u>pursuant to any contract with Defendants-Appellees</u>. Plaintiffs-Appellants have not alleged, and Defendants-Appellees have never suggested, that there is a contract between Defendants-Appellees and Plaintiffs-Appellants' Assignors. In the absence of such a contract, courts in this Circuit have permitted unjust enrichment claims to go forward at the pleading stage. *See, e.g., Starr*, 509 F. Supp. 3d at 459. Thus, the district court's second reason for dismissing Plaintiffs-Appellants' unjust enrichment claims was erroneous. Accordingly, the district court clearly erred in dismissing Plaintiffs-Appellants' state law claims.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF-APPELLANTS' MOTION FOR INJUNCTIVE RELIEF

The district court denied Plaintiffs-Appellants' motion for a TRO and preliminary injunction on the basis that Plaintiffs-Appellants failed to establish that they were likely to succeed on the merits, i.e., on the same grounds for dismissing Plaintiffs-Appellants' federal RICO and state law claims. [*See* JA275]. Considering the district court erred in dismissing Plaintiffs-Appellants' federal RICO and state law claims, as discussed above, the district court abused its discretion in denying Plaintiffs-Appellants' motion for a TRO and preliminary injunction. *See Di Biase*, 872 F.3d at 229.

## V. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF-APPELLANTS' MOTION TO ALTER OR AMEND JUDGMENT OR RELIEF FROM JUDGMENT

The district court denied Plaintiffs-Appellants' motion to alter or amend judgment or relief from judgment because (1) that Plaintiffs-Appellants did not adequately allege proximate cause; and (2) the IPR rule bars Plaintiffs-Appellants' claims. [*See* JA436–440].[25] However, both findings were an abuse of discretion.[26]

### A. This District Court Abused Its Discretion in Its Proximate Cause Analysis

First, for the reasons stated above, the district court misapplied the law in finding that proximate cause was lacking for Plaintiffs-Appellants' federal RICO, state law consumer protection, and Florida RICO claims. Thus, the district court's proximate cause finding was an abuse of discretion, as legally erroneous. *See Di*

---

[25] The district court made no effort to address Plaintiffs-Appellants' unjust enrichment arguments. [*See* JA308–309].

[26] The district court also appears to take umbrage that Plaintiffs-Appellants filed a motion under Rule 59(e) and/or Rule 60(b), as was their legal right, by taking an inexplicable jab at Plaintiffs-Appellants' purported "assignment theories and litigation strategies" in other cases. [JA437]. Yet the district court previously found, without issue, that Plaintiffs-Appellants had standing under their Assignments, [*see* JA249–254], and the district court failed to articulate what impermissible litigation strategies, if any, Plaintiffs-Appellants' had employed in this case. The docket here reflects no basis for such accusations, especially when Plaintiffs-Appellants were never given a chance to amend after a single round of motion-to-dismiss briefing. By contrast, Judge Robert B. Kugler of the U.S. District Court of New Jersey recently found that MSP entities like Plaintiffs-Appellants "do[] not appear the dastardly fiend the motion portrays." *In re Valsartan, Losartan & Irbesartan Multi-Dist. Litig.*, 2024 WL 776757, at \*6 (D.N.J. Feb. 26, 2024).

*Biase*, 872 F.3d at 229.

Moreover, the district court's attempts to distinguish *Alberts* from this case fall flat. Just as the plaintiffs in *Albert* were the only party to pay for the inflated price of inmate calling services, Plaintiffs-Appellants' Assignors are the only parties that paid directly for supra-competitively priced, artificially induced, and tainted claims for Xenazine on behalf of their beneficiaries, who did not pay out of pocket for Xenazine at all. [*See* JA022–026, JA035, JA049–060, JA069–078, JA214, JA216, JA218, JA222–236]. In other words, there are no "parties more closely or directly victimized by the defendant's wrongdoing" than Assignors, as no other party foots the bill for the Xenazine at issue here. *Albert*, 68 F.4th at 911. The district court's failure (or inability) to articulate who is the more direct victim belies its findings.[27] Even worse, the district court failed to even articulate why this was a "too distinct" case. Under *Albert*, this is not a "too distinct" case, as "the alleged RICO violation, (misrepresentations to the [Government and others], via mail and wire communications)", as well as the transmission of bribes and the use of mail and wire to further the scheme to defraud, "and the cause of Plaintiffs' injuries (charging

---

[27] To the extent that the district court was implicitly repeating its finding that the Government was the more direct victim, [*see* JA279], this Court has made clear (and as discussed above) "a scheme in which Defendants directly injured both [Plaintiffs-Appellants] and [the Government] in tandem . . . is no less logically related to [Plaintiffs-Appellants'] injuries than in *Bridge*." *Albert*, 68 F.4th at 910.

inflated prices)", as well as artificially inducing and tainting claims for Xenazine, "were both committed by the same parties—Defendants." *Albert*, 68 F.4th at 913.

Thus, the district court's attempts to distinguish this case from *Albert* entirely missed the mark. Accordingly, the district court's proximate cause analysis was an abuse of discretion as legally erroneous. *See Di Biase*, 872 F.3d at 229.

### B.    This District Court Abused Its Discretion in Applying the IPR

The district court's belated application of the IPR was also an abuse of discretion, as applying the IPR here was legally erroneous. First, the Supreme Court has declined to apply bright-line antitrust standing rules to RICO on at least two occasions. *See, e.g., Anza*, 547 U.S. 451; *Bridge.*, 553 U.S. at 660. While the IPR requires direct purchasing, *Holmes* adopted a "direct-injury" requirement, stating that "'direct' should merely be understood as a reference to the proximate-cause enquiry[.]" *Holmes*, 503 U.S. at 272 n.20. *Holmes* used a flexible proximate cause analysis "to prevent [courts from] blur[ring] the line between RICO and antitrust laws." *Anza*, 547 U.S. at 460. The rationale behind this approach is simple, a plaintiff can be injured under RICO due to reasons beyond the purchase of a product (e.g., arson, bribery, murder, etc.).

Importantly, *Holmes* addressed the same concerns as *Illinois Brick*:[28] (1) directness between racketeering scheme and injury; (2) risk of duplicative

---

[28] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

recoveries; and (3) whether a more immediate victim is better situated to sue. Instead of applying bright-line antitrust rules, *Holmes* "turned to the common-law foundations of . . . proximate cause." *Anza*, 547 U.S. at 547; *Bridge* 553 U.S. at 659 ("A contrary holding would ignore *Holmes'* instruction that [RICO] is generally not amenable to bright-line rules."). In reversing dismissal on "statutory standing," *Holmes* held that proximate cause—as an element of statutory standing—is the only applicable standard for RICO standing. 503 U.S. at 263–64. The Supreme Court has reaffirmed *Holmes*. *See, e.g., Bridge*, 553 U.S. at 645–47 (holding that RICO standing involves only a proximate cause analysis that allowed non-purchasers standing to sue).[29] This rejection of injecting antitrust standing to RICO incorporates Congress's intent. Initially, RICO was proposed as an antitrust amendment. *See* S. 2048, 90th Cong. (1st Sess. 1967). However, after reviewing this proposal, the American Bar Association recommended enacting an entirely separate law, which is what Congress did. *See* 115 Cong. Rec. 6994 (1969). According to the report:

> The use of antitrust laws [to] combat[] organized crime could create inappropriate and unnecessary obstacles. . . . Such a private litigant would have to contend with a body of precedent—appropriate in a purely antitrust context—setting strict requirements on questions such as "standing to sue" and "proximate cause."

*Id*. at 6995; *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) ("[T]he

---

[29] Likewise, *Lexmark Int'l, Inc. v. Static Control Components, Inc.* held that proximate causation is an element of "statutory standing" and held that plaintiffs had a cause of action, despite being the "indirect victim." 572 U.S. 118, 139–40 (2014).

court below created exactly the problems Congress sought to avoid [by] borrowing . . . from antitrust standing principles."). Thus, the Supreme Court precedent and Congressional intent reject applying bright-line antirust standing rules like the IPR in RICO.[30]

As for case law in this Circuit, *NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931 (4th Cir. 1987), *overruled by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990), was not a purchaser case at all and simply emphasized the directness of RICO injury, rather than importing *Illinois Brick* to the RICO context. 814 F.2d at 937. This Circuit has consistently held RICO standing focuses on "whether the conduct has been so significant and important a cause that the defendant should be held responsible." *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir. 1996) (cleaned up); *see also Brandenburg v. Seidel*, 859 F.2d 1179, 1189 (4th Cir.1988), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) (The standing inquiry is guided by "the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection."); *Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 263

---

[30] Most courts have found that RICO standing does not involve such a bright-line rule. *See, e.g., In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1324–25 (D. Kan. 2018); *Bivens Gardens Off. v. Barnett Banks of Fla.*, 140 F.3d 898, 906 (11th Cir. 1998); *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, 2018 WL 1393790 at *19 (S.D. Fla. Jan. 26, 2018); *In re Copper Antitrust Litig.*, 2000 WL 34230131 at *19 (W.D. Wis. July 12, 2000); *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995).

(4th Cir. 1994) ("We did not . . . establish a rule that only injuries suffered by the immediate victim of a predicate act satisfied the 'by reason of' requirement of § 1964(c)."). Notably, in *Mid Atl. Telecom, Inc.*, plaintiff accused a competitor of violating RICO by using illegal tactics and fictitious charges to entice new subscribers. *See* 18 F.3d at 263. The defendant asserted that the customers were the directly injured parties and that plaintiff lacked standing. *See id.* The Fourth Circuit rejected defendant's argument because plaintiff's injuries were not "derivative of any losses suffered by [the immediate victims]." *Id.*

As for decisions in other Circuits, the plaintiffs in *McCarthy v. Recordex Serv., Inc.*, neither briefed, nor contested the application of the IPR to RICO. 80 F.3d 842, 855 (3d Cir. 1996) (Plaintiffs "conceded that, if they lacked antitrust standing, they also lacked RICO standing."). Likewise, the unpublished opinion in *Humana, Inc. v. Indivior, Inc.*, 2022 WL 17718342 (3d Cir. Dec. 15, 2022), is inapposite because the plaintiffs neither briefed nor contested whether the IPR applies to RICO categorically and "specifically admit[ed] that they made 'indirect purchases.'" *Id.* at *2.[31] What's more, *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004) was not an indirect purchaser case at all and even held that the employees were

---

[31] Regardless, the Third Circuit appears to have retreated from applying the bright-line rule in *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932–34 (3d Cir. 1999).

directly injured and conferred standing. *See id*. at 615–18.[32] The Seventh Circuit's decision in *Carter v. Berger* is equally distinguishable,[33] as the *Carter* court dismissed a taxpayer suit pursuant to Fed. R. Civ. P. 17, on the grounds that the taxpayer plaintiffs were not the real parties in interest. 777 F.2d 1173, 1174 (7th Cir. 1985).[34] To the extent these cases are interpreted to apply IPR to RICO, these cases misinterpret *Holmes* and ignore the Supreme Court's repeated admonishment to not "blur the line between RICO and antitrust laws." *Anza*, 547 U.S. at 460; *see also Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 890 (10th Cir. 2017) ("[P]laintiff is not required to plead that he is a victim of the defendant's underlying crime to establish a direct injury.").

Moreover, even if the IPR applied to RICO, it is inapplicable here. The IPR applies only to "pass-on" injuries. The *Apple* Court refused to apply *Illinois Brick*

---

[32] While *Albert* referenced *Trollinger* as an example of a "more direct victim" case, *see Albert*, 68 F.4th at 911, this Court did not hold that *Trollinger* was applicable to the *Albert* case. It should not do so here as well.

[33] While *Tiller* referenced *Carter*, *see Tiller*, 814 F.2d at 937, it did not follow *Carter* in importing *Illinois Brick* to RICO. Instead, the *Tiller* Court observed that "[a]n indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer for relief." *Id*. Here, there is no other party from which Plaintiffs-Appellants could seek relief, as no other party paid for the Xenazine at issue here.

[34] As for the Seventh Circuit opinion in *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982), on which the district court relied by way of *Levey v. E. Stewart Mitchell, Inc.*, 585 F. Supp. 1030, 1034-35 (D. Md. 1984), [*see* JA438], *Cenco* did not involve purchasers at all and did not reference or apply *Illinois Brick* in any way. *Levey*, too, was not a purchaser case and involved a more directly injured party, which is absent here.

because plaintiffs did not rely on a pass-on theory, despite intermediate actors in the supply chain. *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1522 (2019). So too, this RICO claim is not premised on passed-on overcharges. The copayment scheme was not completed—and no injury existed—until Defendants-Appellees caused Plaintiffs-Appellants' Assignor to pay for Xenazine claims that were supra-competitively priced, artificially induced, and tainted under the AKS. [*See* JA022–026, JA035, JA049–060, JA069–078]. The Assignors are direct victims, as they are also the *only* victims, and suffered injury that is "inextricably intertwined with the injury the conspirators sought to inflict." *Blue Shield of Va. v. McCready*, 457 U.S. 465, 479 (1982). The only injury here was inflicted on Assignors and directly caused by Defendants-Appellees' receiving payment directly from Assignors as a result of the scheme. *Illinois Brick* is inapplicable as there are not "multiple parties at different levels of a distribution chain . . . trying to all recover the same passed-through overcharge initially levied by the manufacturer at the top of the chain." *Apple*, 139 S. Ct. at 1524–25. TheraCom admits to being a specialty pharmacy and received payment for the Xenazine claims directly from the Plaintiffs-Appellants' Assignors. [*See* JA214, JA216, JA218, JA222–236]. In sum, there is simply no application of the IPR to Plaintiff-Appellants' federal RICO claim.[35]

---

[35] The district court's indirect reference to *Humana, Inc. v. Biogen, Inc.*, 666 F. Supp. 3d 135 (D. Mass. 2023), [*see* JA440], notably omits the following observations:

As further proof of the district court's abuse of discretion, the district court

entirely failed to separately analyze whether the IPR applies to Plaintiffs-Appellants'

---

It is certainly true that the concept of a "purchaser" does not transfer neatly from the antitrust context to the health-care context. Antitrust cases typically involve a marketplace scenario with multiple levels, with payment for and title to goods passing from one participant to another at each level—for example, a manufacturer sells to a wholesaler, who sells to a retailer, who sells to a customer. In the antitrust marketplace, therefore, the ultimate consumer makes the decision to buy a product, pays for it, and uses it.

In the prescription-drug marketplace, those purchasing functions are normally split three ways: the physician effectively makes the decision to buy the product; the health insurer effectively pays for it (although the patient is required to make a copay); and the patient owns and uses it. For that reason, in the prescription-drug marketplace, a scheme to defraud often targets the government or third-party payors—the entities that actually pay for the drugs at issue. . . .

To the extent, however, that the theory of injury is that the scheme caused the writing of a greater number of expensive prescriptions, the wholesaler . . . may have no incentive to file suit against the drug manufacturer. The wholesaler is selling a higher quantity of the expensive drugs . . . and likely has suffered no injury. _Instead, it is the payors—the health insurer and the patients—who are the injured parties. And because the scheme here compensated the patients by making their copayment, the insurer may be the only injured party_.

In any event, while there may be reasons to carve out an exception to the indirect purchaser rule, or to conclude that it should not apply, such a decision is fraught with policy judgments that are more properly committed to the Court of Appeals rather than a single District Judge.

666 F. Supp. 3d at 152–54 (emphasis added). This Court is precisely in the position to do just that.

state law consumer protection claims or Florida RICO claims.[36] For one, courts have concluded that the IPR does not apply to the consumer protection statutes in Florida and Massachusetts. *See, e.g., In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 840 (E.D. Pa. 2019) ("Florida courts have held that the Florida Deceptive and Unfair Trade Practices Act does not have the same indirect purchaser restriction as the state's antitrust law."); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 545 (E.D. Pa. 2010) ("Massachusetts does not bar indirect purchaser standing under its consumer protection act.").

Moreover, for those state consumer protection statutes with harmonization provisions with the FTC Act (e.g., Connecticut, Illinois, and Michigan), courts have found that the IPR does not bar claims under such statutes. *See, e.g., Fed. Trade Comm'n v. Mylan Lab'ys, Inc.*, 99 F. Supp. 2d 1, 5 (D.D.C. 1999) (Connecticut); *Staley,* 446 F. Supp. 3d at 633 (Connecticut, Illinois); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc,* 2018 WL 7197233, at *42, 45 (S.D.N.Y. Dec. 26, 2018) (Illinois, Michigan). This logic should also extend to Ohio, *see Ohio* Rev. Code Ann. § 1345.02(c), and New York, *see Braynina*, 2016 WL 5374134, at *6. Plus, courts have permitted indirect purchasers to pursue claims under N.Y. Gen. Bus. Laws § 349. *See, e.g., In re Dynamic Random Access Memory (DRAM)*

---

[36] Notably, the district court never declined to exercise supplemental jurisdiction over Plaintiffs-Appellants state law claims after dismissing their federal claims.

*Antitrust Litig.*, 536 F. Supp. 2d 1129, 1143 (N.D. Cal. 2008). As for Florida RICO,

because the IPR does not apply to Plaintiffs-Appellants' federal RICO claims, it

should not apply to their Florida RICO claim either. *See Jackson v. BellSouth*

*Telecomms.*, 372 F.3d 1250, 1263–64 (11th Cir. 2004).[37] Thus, despite the district

court's glaring omission on this issue, the IPR does not apply to Plaintiffs-

Appellants' state law claims either.

Thus, the district court's proximate cause and IPR findings were legally

erroneous. Accordingly, the district court abused its discretion in making such

findings. *See Di Biase*, 872 F.3d at 229.

## VI. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF-APPELLANTS' REQUEST TO AMEND THE COMPLAINT

The district court entirely failed to consider whether the proposed First

Amended Complaint would survive Rule 15(a) amendment. [*See* JA429–440]. In

---

[37] What's more, Florida RICO contains predicate acts not included as predicate acts under federal RICO. Namely, Fla. Stat. § 817.234 prohibits a person from, "with the intent to injure, defraud, or deceive any insurer[,] [p]resents or causes to be presented any written or oral statement, as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy or a health maintenance organization subscriber or provider contract, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claims[.]" Fla. Stat. § 817.234. Courts have found violations of this statute qualifies as predicate act under Florida RICO. *See, e.g., Gov't Emps. Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*, 2017 WL 1196438, at *4 (M.D. Fla. Mar. 29, 2017). Here, Plaintiffs-Appellants alleged that Defendants-Appellees violated Fla Stat. §817.234. [*See* JA096–098]. The district court ignored these allegations entirely.

this Circuit, district courts are required to do so for all post-judgment motions, as this Court has explained:

> In *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (*en banc*), we explained that a district court may not grant a post-judgment motion to amend the complaint unless the court first vacates its judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b). To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a). In other words, a court should evaluate a postjudgment motion to amend the complaint "under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." *Laber*, 438 F.3d at 427; *accord Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009).

*Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 470–71 (4th Cir. 2011).

A district court should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). This Rule reflects the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id*. "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426–27 (internal quotation marks and citations omitted). "An amendment is not prejudicial . . . if it merely adds an additional theory of recovery

to the facts already pled and is offered before any discovery has occurred." *Id*. (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). "Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend." *Id*. (citing *Davis*, 615 F.2d at 613). An amendment is futile when the proposed amended complaint would not satisfy the requirements of the federal rules. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

Here, the district court's failure to consider whether Plaintiffs-Appellant's proposed FAC was futile or otherwise improper, as required by this Court, is an abuse of discretion. *See Di Biase*, 872 F.3d at 229. Accordingly, this Court should remand and permit Plaintiffs-Appellants to amend their Complaint, especially in light of the district court's errors in understanding the allegations contained therein, as discussed above.

However, to the extent that the district court's order could be interpreted to implicitly find the proposed FAC futile, Plaintiffs-Appellants' proposed FAC is not futile because Plaintiffs-Appellants can allege facts, and provide additional evidence, in the form of claims data that (1) Assignors directly purchased Xenazine from TheraCom; and (2) Defendants-Appellees proximately caused Assignors injuries by (a) inducing the over-dispensing of Xenazine, (b) eliminating price sensitivity to price Xenazine supra-competitively, and (c) by causing Assignors to pay claims for Xenazine tainted by violations of the AKS and several state bribery

statutes, as discussed below.

### A.     Plaintiffs-Appellants Can Allege Facts That Their Assignors Were Direct Purchasers

Plaintiffs-Appellants can allege facts that their Assignors directly purchased Xenazine from conspiring specialty pharmacies, including TheraCom. Thus, consistent with the district court's findings that Plaintiffs-Appellants' Assignors were "Medicare insurers who must *pay directly* . . . [for] Medicare beneficiaries' prescription costs," were "*direct payers* of Xenazine," and "*paid directly* for Xenazine," [*see* JA268–269 (emphasis added)], Plaintiffs-Appellants can allege facts that they are direct purchasers.

For starters, Plaintiffs-Appellants can allege that their Assignors directly paid for Xenazine from specialty pharmacies, including Lundbeck's co-conspirator TheraCom, which holds itself out as a specialty pharmacy. While Defendant TheraCom suggested at the motion-to-dismiss hearing that it was merely a data company, this is plainly belied by its own submissions to the district court, [*see* Doc. 34 at 10 ("TheraCom is *a specialty pharmacy* that has provided a wide range of support services to pharmaceutical drug manufacturers, including reimbursement and patient access support services." (emphasis added))]. Specifically, Plaintiffs-Appellants allege in their proposed FAC that their Assignors directly purchased Xenazine from co-conspiring specialty pharmacies, including TheraCom. [*See* JA316–317, JA330, JA333, JA363, JA366–367]. Additionally, while the district

court granted Plaintiffs-Appellants' motion to supplement their Complaint to include claims data (though it did not move the needle on its findings), [*see* JA278–279], Plaintiffs-Appellants have included in their proposed FAC an updated spreadsheet of claims data. This updated spreadsheet not only identifies the claims from Assignors' beneficiaries for Xenazine and the date of service (as the previous spreadsheet did), but it also contains claims involving direct purchases from TheraCom, after TheraCom solicited payment through the submission of claims it knew were tainted and unpayable. [*See* Doc. 95-5].[38] With these allegations, Plaintiffs-Appellants can sufficiently allege that their Assignors were direct purchasers. Note that this is in direct contrast to what the plaintiffs in *Indivior* alleged, where they "specifically admit that they made 'indirect purchases.'" 2022 WL 17718342, at *2.

Thus, Plaintiffs-Appellants can allege facts that their Assignors directly purchased Xenazine from TheraCom. Accordingly, the IPR is not an impediment to Plaintiffs-Appellants' claims, and amendment is not futile.

---

[38] Plaintiffs-Appellants can provide the district court, as the court of first impression, with further claims data that established payments directly to TheraCom, this claims data includes the dates the prescription was dispensed; the beneficiary information; the National Drug Code associated with the claim for Xenazine; the amount paid by the Assignors, and the pharmacy (including TheraCom) associated with the dispensing.

**B.**      **Plaintiffs-Appellants Can Allege Facts That Defendants-Appellees Proximately Caused Assignors' Injuries**

Next, Plaintiffs-Appellants can allege facts that Defendants-Appellees proximately caused economic injury to their Assignors. Specifically, Defendants-Appellees proximately caused economic injury to Assignors in three ways: (1) Defendants-Appellees induced over-dispensing of Xenazine; (2) Defendants-Appellees eliminated price sensitivity, which lead to supra-competitive pricing of Xenazine; and (3) Defendants-Appellees, by engaging in conduct in violation of the AKS and aforementioned state bribery laws, caused Assignors to pay tainted claims for Xenazine.

First, Plaintiffs-Appellants can plead facts that Defendants-Appellees proximately caused injury to their Assignors by inducing the over-dispensing of Xenazine. Plaintiffs-Appellants allege in the proposed FAC that co-conspirator specialty pharmacies, including TheraCom, provided marketing and advertisement materials informing patients and prescribing physicians of the opportunity to obtain "free" Xenazine. [*See* JA318, JA333–334, JA368]. And Defendants-Appellees intentionally steered patients away from Lundbeck's free drug program to CVC's PAP. [*See* JA317, JA368–369, JA372]. These practices, of which Plaintiffs-Appellants now have additional documentary evidence,[39] [*see* JA333, JA363–364],

---

[39] Plaintiffs-Appellants were only recently able to gain access to such documentation

only served to reinforce the effect of the Co-Payment Scheme to drive increased dispensing for the increasingly expensive Xenazine, the co-payments of which were covered by CVC, over cheaper therapeutic alternatives. [*See* JA332, JA334–335, JA343, JA362, JA367–368]. Moreover, Plaintiffs-Appellants allege that Defendants-Appellees knew, or had reason to know, that prescription abandonment and low medication adherence are serious issues in treating disorders, such as chorea, with high-priced specialty medication, such as Xenazine, due to the high co-payment cost (which is set in proportion to the ever-inflating drug price set by Lundbeck). [*See* JA371]. Thus, Plaintiffs-Appellants can sufficiently allege that Defendants-Appellees proximately caused injury to their Assignors by inducing the over-dispensing of Xenazine when they specifically marketed to physicians and patients to receive Xenazine "for free".

Second, Plaintiffs-Appellants can allege facts that Defendants-Appellees proximately caused injury to their Assignors by eliminating price sensitivity, resulting in supra-competitive prices for Xenazine. Specifically, Plaintiffs-Appellants allege in the proposed FAC that Lundbeck was able to overly inflate the price of Xenazine by bribing CVC to do what Lundbeck could not do alone, and cover the co-payment obligations of Assignors' beneficiaries, thereby circumventing

from CVC, as detailed in Plaintiffs-Appellants' motion to supplement that the district court granted. [*See* JA213–236].

a Congressionally imposed price sensitivity measure. [*See* JA314–315, JA319–322, JA328, JA332, JA334–335, JA363, JA367–368, JA372–373, JA375–376]. As the OIG-HHS specifically recognized, Medicare's co-payment requirement is a "market safeguard against inflated prices," which was eliminated when CVC and Lundbeck unlawfully covered the co-payments of Assignors' beneficiaries. 70 Fed. Reg. 70623-03, 70626 (Nov. 22, 2005). Thus, Plaintiffs-Appellants can sufficiently allege that Defendants-Appellees proximately caused injury to their Assignors by drastically inflating the price of Xenazine and eliminating the intended safeguard against such supra-competitive prices.

Third, Plaintiffs-Appellants can plead facts that Defendants-Appellees proximately caused injury to their Assignors by causing them to pay for Xenazine claims that were tainted by violations of the federal AKS as well as state anti-kickback statutes. Namely, the Plaintiffs-Appellants allege in the proposed FAC that Lundbeck's bribes/kickbacks, guised as "donations", to CVC in exchange for patient data and referrals (facilitated by TheraCom) violated the federal AKS and several state anti-kickback statutes. [*See* JA316–319, JA322–323, JA332, JA346–347, JA360, JA364–365, JA367–369, JA372–373, JA375]. Not only did this violate the Travel Act, but this also led each Defendant-Appellant to submit false certifications to the Government and others, [*see* JA316–317, JA322, JA323, JA339, JA365–367, JA369–370, JA373], thereby rendering unpayable and tainting all claims for

Xenazine that Assignors paid, [*see* JA314–319, JA321, JA323, JA328, JA330, JA332, JA369–370, JA375–376]. Accordingly, Plaintiffs-Appellants can sufficiently allege that Defendants-Appellees proximately caused injury to their Assignors by causing them to pay unpayable, tainted claims for Xenazine.

Thus, the allegations contained in the proposed FAC establish that Defendants-Appellees proximately caused injury to Assignors by inducing the over-prescription of Xenazine, eliminating price sensitivity to price Xenazine supra-competitively, and by causing Assignors to pay tainted claims for Xenazine. Accordingly, Plaintiffs-Appellants can allege facts that Defendants-Appellees proximately caused economic injury to their Assignors.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully request that this Court reverse the district court's dismissal and denial of a TRO and preliminary injunction and remand for further proceedings. Alternatively, Plaintiffs-Appellants respectfully request that this Court reverse the district court's denial of Plaintiff-Appellants' motion to alter or amend the judgment or relief from judgment, including the district court's denial of Plaintiffs-Appellants' request to amend the complaint, and remand for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants respectfully request oral argument.

Dated: March 22, 2024                    Respectfully submitted by,

*/s/Shereef H. Akeel*
Shereef H. Akeel (MI Bar No. 54345)
Adam S. Akeel (MI Bar No. 81328)
Samuel R. Simkins (MI Bar No. 81210)
Daniel W. Cermak (MI Bar No. 84460)
Hayden Pendergrass (MI Bar No. 86888)
AKEEL & VALENTINE, PLC
888 W. Big Beaver Road, Ste 350
Troy, Michigan 48084
(248) 269-9595
Hayden@akeelvalentine.com
Shereef@akeelvalentine.com
Adam@akeelvalentine.com
Sam@akeelvalentine.com
Daniel@akeelvalentine.com

David Hilton Wise (VA Bar No. 30828)
William N. Evans (VA Bar No. 87506)
WISE LAW FIRM, PLC
10640 Page Street, Ste 320
Fairfax, Virginia 22030
(703) 934-6377
dwise@wiselaw.pro
wevans@wiselaw.pro

John W. Cleary (FL Bar No. 118137)
MSP RECOVERY LAW FIRM
2701 S. LeJeune Rd., 10th Floor
Coral Gables, Florida 33134
(305) 614-2222
jcleary@msprecoverylawfirm.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document does not exceed 13,000 words, as it contains 12,718 words including footnotes.

2.      This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word in proportionally spaced typeface using Times New Roman font in 14-point size.


Dated: March 22, 2024                    */s/Hayden Pendergrass*
                                         Hayden Pendergrass

                                         *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2024, I filed and served the foregoing filing

with the Clerk of the Court by causing a copy to be electronically filed via the

appellate CM/ECF system. I also certify that the participants in the case are

registered CM/ECF users and will be served via the CM/ECF system.


Dated: March 22, 2024              */s/David H. Wise*
                                   David H. Wise

                                   *Counsel for Plaintiffs-Appellants*