**No. 24-1043**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MSP RECOVERY CLAIMS SERIES LLC; MSPA CLAIMS 1, LLC; MSP RECOVERY CLAIMS SERIES 44, LLC; MSP RECOVERY CLAIMS PROV, SERIES, LLC; MSP RECOVERY CLAIMS CAID, SERIES LLC,

Plaintiffs-Appellants,

v.

LUNDBECK, LLC; CARING VOICE COALITION, INC.; THERACOM, LLC; ADIRA FOUNDATION,

Defendants-Appellees.

_____

On Appeal from the U.S. District Court for the Eastern District of Virginia
No. 3:22-cv-00422

_____

### PLAINTIFFS-APPELLANTS' REPLY BRIEF
_____

Shereef H. Akeel
Adam S. Akeel
Samuel R. Simkins
Daniel W. Cermak
Hayden Pendergrass
AKEEL & VALENTINE, PLC
888 W. Big Beaver Road, Ste 350
Troy, Michigan 48084
(248) 269-9595

John W. Cleary
MSP RECOVERY LAW FIRM
2701 S. LeJeune Rd., 10th Floor
Coral Gables, FL 33134
(305) 614-2222

David Hilton Wise
William N. Evans
WISE LAW FIRM, PLC
10640 Page Street, Ste 320
Fairfax, Virginia 22030
(703) 934-6377

*Counsel for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................2

   I.     DEFENDANTS-APPELLEES' ARGUMENTS REGARDING MSP's FEDERAL RICO CLAIMS ARE MERITLESS ...................................2

   II.    DEFENDANTS-APPELLEES' ARGUMENTS REGARDING MSP's STATE LAW CLAIMS ARE MERITLESS.....................................18

   III.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MSP'S MOTION FOR INJUNCTIVE RELIEF...................................23

   IV.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MSP'S REQUEST TO AMEND THE COMPLAINT .......................24

CONCLUSION .....................................................................................26

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Albert v. Glob. Tel\*Link*,
68 F.4th 906 (4th Cir. 2023) .......................................................Passim

*Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*,
948 F. Supp. 2d 338 (S.D.N.Y. 2013)........................................................ 1

*Bivens Gardens Off. v. Barnett Banks of Fla.*,
140 F.3d 898 (11th Cir. 1998)................................................................ 16

*Borg v. Warren*,
545 F. Supp. 3d 291 (E.D. Va. 2021) ...................................................... 4

*Braynina v. TJX Companies, Inc.*,
2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016)...................................... 20

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) .............................................................. 2, 7, 11

*Faith Enters. Grp., Inc. v. Avis Budget Grp., Inc.*,
2012 WL 1409403 (N.D. Ga. Apr. 20, 2012) ...................................... 12

*First Am. Corp. v. Al-Nahyan*,
17 F. Supp. 2d 10 (D.D.C. 1998) .......................................................... 21

*Foman v. Davis*,
371 U.S. 178 (1962)............................................................................... 25

*GIV, LLC v. Int'l Bus. Machines Corp.*,
2007 WL 1231443 (E.D. Va. Apr. 24, 2007) ...................................... 22

*GolTV, Inc. v. Fox Sports Latin Am., Ltd.*,
2018 WL 1393790 (S.D. Fla. Jan. 26, 2018) ...................................... 16

*Gov't Emps. Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*,
2017 WL 1196438 (M.D. Fla. Mar. 29, 2017) .................................... 23

*Hanover Shoe Inc., v. United Shoe Machinery Corp.*,
392 U.S. 481 (1968)................................................................................. 9

*Humana, Inc. v. Biogen, Inc.*,
666 F. Supp. 3d 135 (D. Mass. 2023) ............................................. 8, 18

*Illinois Brick Co. v. Illinois*,
431 U.S. 720(1977)................................................................................ 16

*In re Am. Honda Motor Co., Inc. Dealerships Rels. Litig.*,
941 F. Supp. 528 (D. Md. 1996) .......................................................... 12

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
804 F.3d 633 (3d Cir. 2015)................................................................... 9

*In re Copper Antitrust Litig.*,
2000 WL 34230131 (W.D. Wis. July 12, 2000)................................. 16

*In re EpiPen Direct Purchaser Litig*,
   2022 WL 1017770 (D. Minn. Apr. 5, 2022) ......................................................... 5
*In re Lidoderm Antitrust Litig.*,
   2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ...................................................... 10
*In re Nat'l Prescription Opiate Litig*.,
   440 F. Supp. 3d 773 (N.D. Ohio 2020) ............................................................. 10
*In re Neurontin Mktg. & Sales Pracs. Litig.*,
   712 F.3d 21 (1st Cir. 2013) ................................................................................. 8
*In re Neurontin Mktg. & Sales Pracs. Litig*.,
   799 F. Supp. 2d 110 (D. Mass. 2011) ................................................................. 9
*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial*,
   159 F. Supp. 3d 898 (N.D. Ill. 2016) .................................................................. 9
*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   349 F. Supp. 3d 881 (N.D. Cal. 2018) .............................................................. 12
*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig*.,
   336 F. Supp. 3d 1256 (D. Kan. 2018) .............................................................. 16
*Ironworkers Loc. 68 v. AstraZeneca Pharms.*,
   634 F.3d 1352 (11th Cir. 2011) ............................................................... 9, 19, 21
*J.R. v. Walgreens Boots Alliance, Inc.*,
   2021 WL 4859603 (4th Cir. Oct. 19, 2021) ..................................................... 20
*Jackson v. BellSouth Telecomms.*,
   372 F.3d 1250 (11th Cir. 2004) ........................................................................ 23
*Katyle v. Penn Nat. Gaming, Inc.*,
   637 F.3d 462 (4th Cir. 2011) ............................................................................ 25
*Levey v. E. Stewart Mitchell, Inc.*,
   585 F. Supp. 1030 (D. Md. 1984) ..................................................................... 15
*Libertad v. Welch*,
   53 F.3d 428 (1st Cir. 1995) .............................................................................. 16
*Longmont United Hosp. v. Saint Barnabas Corp.*,
   305 F. App'x 892 (3d Cir. 2009) ...................................................................... 14
*Mack v. Bristol-Myers Squibb Co.*,
   673 So.2d 100 (Fla. Dist. Ct. App. 1996) ........................................................ 23
*Mallinckrodt ARD LLC*,
   2020 WL 3041309 .......................................................................................... 5, 10
*McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*,
   423 F.3d 1256 (11th Cir. 2005) ........................................................................ 11
*MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*,
   2023 WL 4162338 (C.D. Cal. May 19, 2023) .................................................. 12
*MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*,
   2022 WL 3155035 (S.D. Fla. July 21, 2022) ................................................... 17

*NCNB Nat'l Bank of N.C. v. Tiller*,
  814 F.2d 931 (4th Cir. 1987) ............................................................. 15
*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*,
  943 F.3d 1243 (9th Cir. 2019) ...................................................... 8, 12
*Run Them Sweet, LLC v. CPA Global Ltd.*,
  224 F. Supp. 3d 462 (E.D. Va. 2016) ............................................... 22
*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ........................................................................ 16
*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
  884 F.3d 489 (4th Cir. 2018) ............................................................. 6
*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
  967 F.3d 295 (3d Cir. 2020) ............................................................ 12
*State Farm Mut. Auto. Ins. Co. v. Kugler*,
  2011 WL 4389915 (S.D. Fla. Sept. 21, 2011) ............................... 9, 10
*U.S. ex rel. Cairns v. D.S. Med. LLC*,
  42 F.4th 828 (8th Cir. 2022) ........................................................... 12
*U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*,
  647 F.3d 377 (1st Cir. 2011) ........................................................... 11
*U.S. ex rel. Kester v. Novartis Pharms. Corp.*,
  41 F. Supp. 3d 323 (S.D.N.Y. 2014) ................................................ 11
*U.S. ex rel. Martin v. Hathaway*,
  63 F.4th 1043 (6th Cir. 2023) ......................................................... 12
*U.S. ex rel. Travis v. Gilead Scis., Inc.*,
  2022 WL 991382 (E.D. Pa. Apr. 1, 2022) ......................................... 5
*U.S. ex rel. Wilkins v. United Health Grp., Inc.*,
  659 F.3d 295 (3d Cir. 2011) ............................................................ 11
*United Healthcare Servs., Inc. v. United Therapeutics Corp.*,
  2024 WL 1256266 (D. Md. Mar. 25, 2024) ........................................ 7
*United States v. Blair*,
  2021 WL 4339132 (D. Md. Sept. 23, 2021) ....................................... 5
*United States v. Curry*,
  461 F.3d 452 (4th Cir. 2006) ............................................................. 4
*United States v. Gross*,
  370 F. Supp. 3d 1139 (C.D. Cal. 2019) .............................................. 6
*United States v. Miss. Valley Generating Co.*,
  364 U.S. 520 (1961) ........................................................................ 12
*United States v. Rogan*,
  517 F.3d 449 (7th Cir. 2008) ........................................................... 12

*United States v. Rogers*,
  389 F. Supp. 3d 774 (C.D. Cal. 2019) ................................................ 6
*United States v. Teva Pharms. USA, Inc.*,
  560 F. Supp. 3d 412 (D. Mass. 2021) ................................................ 5
*Wicomico Nursing Home v. Padilla*,
  910 F.3d 739 (4th Cir. 2018) ........................................................... 18
*Williams v. Equity Holding Corp.*,
  498 F. Supp. 2d 831 (E.D. Va. 2007) ................................................ 4

Statutes

18 U.S.C. §§ 1952(a), (b)(i)(2), 1961(1)(B) ........................................ 5
42 U.S.C. § 1320a-7b(b)(1) .............................................................. 5
42 U.S.C. § 1320a-7b(g) ................................................................. 14
Conn. Gen. Stat. § 42-110b(b) ......................................................... 20
Fla. Stat. § 501.204(2) .................................................................... 20
Fla. Stat. §§ 722.102(a)22, 817.234 .................................................. 23
Ill. Comp. Stat. § 505/2 ................................................................... 20
Mass. Gen. Laws ch. 93A, § 2(b) ..................................................... 20
Mich. Comp. Laws § 445.911(3)(c) ................................................... 20
Ohio Rev. Code Ann. § 1345.02(c) ................................................... 20

Rules

Fed. R. Civ. P. 15(a)(2) ................................................................... 25

Regulations

42 CFR § 423.505(h)(1) ................................................................... 11
70 Fed. Reg. 70623-03 (Nov. 22, 2005) ............................................. 10

Other Authorities

S. 2048, 90th Cong. (1st Sess. 1967). ................................................ 15
115 Cong. Rec. 6994 (1969) ............................................................. 15

## **INTRODUCTION**

Defendants-Appellees Lundbeck LLC ("Lundbeck") and TheraCom, LLC ("TheraCom") claim that this case is just another "policy dispute[]". [Defs.-Appellees' Br. at 11]. However, the case they cite for this proposition, *Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338 (S.D.N.Y. 2013), did not involve Department of Justice investigations that culminated in multi-million dollar settlements, like those entered into by Lundbeck and Defendant-Appellee Caring Voice Coalition, Inc. ("CVC"). [JA051-053, JA074, JA364-366, JA397].

Additionally, MSP[1] entered into a settlement with CVC that gave MSP access to documents that allowed MSP to provide actual claims for Xenazine to the district court that went through CVC and were dispensed by TheraCom. [*See* JA214-219]. Lundbeck and TheraCom claim that this is an "indecipherable spreadsheet", [Defs.-Appellees' Br. at 7], yet the spreadsheet is fashioned as any extract from a database that courts frequently rely on. It was not until this lawsuit was initiated and the subsequent settlement with CVC that this information was available to MSP. [*See* JA214-219].

---

[1] "MSP" herein refers collectively to Plaintiffs-Appellants MSP Recovery Claims Series LLC; MSPA Claims 1, LLC; MSP Recovery Claims Series 44, LLC; MSP Recovery Claims PROV, Series, LLC; MSP Recovery Claims CAID, Series LLC.

Moreover, Lundbeck's and TheraCom's brief does not argue the Supreme Court has *ever* stated the Indirect Purchaser Rule ("IPR") applies to RICO; that is because the Supreme Court has not done so. Likewise, Lundbeck's and TheraCom's brief does not acknowledge that the district court profoundly misunderstood the factual allegations in this case. Instead, Lundbeck's and TheraCom's brief reads like a smear campaign against MSP and perpetuates the district court's misunderstandings of what was alleged. Lundbeck's and TheraCom's house-of-cards legal arguments hinge on faux facts and inapplicable cases. Lundbeck and TheraCom request a "bright line rule" for a cause of action, RICO, that the Supreme Court acknowledged has a breadth of coverage not easily reconciled with "bright line rules", especially considering the long list of enumerated predicate acts underlying RICO. *See Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 649 (2008). This Court should reject such bold, unsubstantiated propositions. Therefore, this Court should reverse and remand the case to the district court.

## **ARGUMENT**

## I.   **DEFENDANTS-APPELLEES' ARGUMENTS REGARDING MSP's FEDERAL RICO CLAIMS ARE MERITLESS**

Lundbeck and TheraCom contend that the district court correctly dismissed MSP's federal RICO claims because (1) MSP failed to allege a predicate act; (2) MSP failed to allege proximate causation; and (3) the IPR bars MSP's federal RICO claims. [Defs.-Appellees' Br. at 25-53]. Each of these arguments fail.

## A.     <u>Predicate Acts</u>

Lundbeck's and TheraCom's argument regarding predicate acts, [Defs.-Appellees' Br. at 25–28], is an inexplicable attempt to have this Court decide for the first time whether MSP's Complaint or proposed First Amended Complaint ("FAC") sufficiently allege predicate acts to support their federal RICO claims. The district court did not find in any way that MSP failed to properly allege predicate acts in either of its orders. Instead, the district court's dismissal order explicitly passed on the issue of predicate acts of mail and wire fraud and violations of the Travel Act, [JA262 n.7], and the district court's order denying MSP's Rule 59(e)/60(b) motion does not address the issue at all. [JA429-440]. If Lundbeck and TheraCom were dissatisfied with the district court's analysis on this issue, they were free to file a cross-appeal, which they failed to do. To the extent Lundbeck and TheraCom are surreptitiously inviting this Court to affirm for reasons never addressed by the district court, this Court should remand to the district court, as the court of first impression, to make findings as to whether MSP sufficiently alleged predicate acts in support of its federal RICO claims.

Regardless, MSP's Complaint sufficiently alleges the predicate acts of (1) mail and wire fraud; and (2) violations of the Trial Act. Oddly, Lundbeck and TheraCom appear to believe that this Court should look to MSP's summary of the case to discern whether predicate acts have been sufficiently alleged. [Defs.-

3

Appellees' Br. at 26]. This is nonsensical.

Instead, this Court should look at the actual pleadings, i.e., MSP's Complaint, which contains specific allegations of the use of mail and wires by and between the Defendant-Appellees to further their scheme to defraud MSP's Assignors into paying for bribery-tainted claims of Lundbeck's drugs at overly inflated prices. [JA051-057, JA069-070, JA072-073, JA077]. These communications in furtherance of the scheme also included false statements of fact, namely, that Defendant-Appellees were complying, in the course of their participation in the Medicare system, with the requisite laws and regulations, including in the submission of claims for payment to MSP's Assignors for Lundbeck's drugs. [JA059, JA072-074].[2] This is sufficient to allege mail and wire fraud under Rule 9(b). *See Borg v. Warren*, 545 F. Supp. 3d 291, 311 (E.D. Va. 2021) (citing *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006)) ("[A] plaintiff need only allege that the mailing or transmittal of information constituted steps in the plot, and were incident to the essential part of the scheme."); *Williams v. Equity Holding Corp.*, 498 F. Supp. 2d 831, 842 (E.D. Va. 2007) (explaining Rule 9(b) is satisfied where plaintiffs "broadly allege that defendants used the mails and [wires] in furtherance of said pattern of racketeering

---

[2] The proposed FAC contains even more allegations demonstrating Defendants-Appellees' repeated use of the mail and wires in furtherance of their scheme. [JA316-319, JA333-334, JA350-355, JA389-391].

activity and . . . to otherwise defraud plaintiffs").[3]

Additionally, MSP's Complaint contains specific allegations regarding violations of the Travel Act, premised on Lundbeck's transmission of bribes, disguised as "donations", to its co-conspirator CVC to violate the laws and regulations governing the Medicare system. [JA054, JA057, JA059, JA071-073]. This is sufficient to allege violations of the Travel Act, which prohibits "unlawful activity", including "bribery . . . in violation of the laws of . . . the United States." 18 U.S.C. §§ 1952(a), (b)(i)(2), 1961(1)(B). One such law, the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b)(1), which is "a law designed to penalize bribery conducted with respect to a federal healthcare program." *U.S. ex rel. Travis v. Gilead Scis., Inc.*, 2022 WL 991382, at *8 (E.D. Pa. Apr. 1, 2022); *see also United States v. Blair*, 2021 WL 4339132, at *14 (D. Md. Sept. 23, 2021).

Lundbeck's and TheraCom's perfunctory reliance on a single unpublished out-of-Circuit district court opinion to suggest otherwise is unavailing. As explained in detail in the briefing below, *In re EpiPen Direct Purchaser Litig*, 2022 WL 1017770 (D. Minn. Apr. 5, 2022), was decided in error. [*See* Doc. 80]. Instead, this Court should follow courts that have found that violations of state law AKS analogs

---

[3] *See also United States v. Teva Pharms. USA, Inc.*, 560 F. Supp. 3d 412, 420-21 (D. Mass. 2021) (finding Rule 9(b) was satisfied under similar co-pay scheme). *Mallinckrodt ARD LLC*, 2020 WL 3041309, at *10 (same).

constitute Travel Act predicates.[4] *See, e.g., United States v. Rogers*, 389 F. Supp. 3d 774, 786 (C.D. Cal. 2019); *United States v. Gross*, 370 F. Supp. 3d 1139, 1149-50 (C.D. Cal. 2019).

In sum, this Court should not accept Lundbeck and TheraCom's invitation to decide for the first time in this case whether MSP has sufficiently alleged predicate acts in support of its federal RICO claims, something the district court entirely declined to do. Should it deem it necessary, this Court should simply remand to the district court to decide this issue for the first time. At any rate, MSP's Complaint sufficiently alleges predicate acts of mail and wire fraud and violations of the Travel Act, and affirmance of the dismissal order on this basis is not supported by the record.

### B.   <u>Proximate Cause</u>

Next, MSP sufficiently alleged proximate cause for its federal RICO claims. As an initial matter, Lundbeck's and TheraCom's dogged reliance on *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489 (4th Cir. 2018), entirely ignores this Court's subsequent decision in *Albert v. Glob. Tel*Link*, 68 F.4th 906 (4th Cir. 2023), which, following Supreme Court precedent, explicitly distinguished *Slay's Restoration* and held that proximate cause was sufficiently

---

[4] MSP's proposed FAC explicitly alleges that Lundbeck's bribes to CVC also constituted violations of several state law AKS analogs in addition to the federal AKS. [JA318, JA322-323, JA332, JA343, JA389, JA391-395].

alleged when "Plaintiffs' injuries (paying inflated prices) don't derive from an injury to a party closer to Defendants in the chain of causation." *Albert*, 68 F.4th at 913; *see also Bridge*, 553 U.S. at 657-58 ("Respondents' alleged injury . . . is the direct result of petitioners' fraud. It was a ***foreseeable*** and natural consequence of petitioners' scheme . . . [when] there are no independent factors that account for respondents' injury, there is no risk of duplicative recoveries . . . , and ***no more immediate victim is better situated to sue***." (emphasis added)). This is precisely the situation here.

Lundbeck's and TheraCom's arguments to the contrary are meritless. For one, *United Healthcare Servs., Inc. v. United Therapeutics Corp.*, 2024 WL 1256266 (D. Md. Mar. 25, 2024), is entirely distinguishable, as the plaintiff there "never allege[d] that UT overcharged it for UT's PAH drugs" and "never allege[d] that UT submitted any claims to it directly." *Id*. at *12. Here, MSP alleges precisely the opposite: that Lundbeck conspired to overcharge MSP's Assignors for Lundbeck's drugs through the submission of claims for payment directly to MSP's Assignors, including *by its co-conspirator* TheraCom. [JA072 ("RICO Defendants engaged in a scheme to illegally profit ***at the direct expense*** of . . . the Assignors and Class Members."); JA218 ("Plaintiffs were able to identify and confirm specific Xenazine claims that . . . result[ed] in payments directly to TheraCom."); JA316-317, JA322, JA323, JA330, JA333-334, JA373-374].

Next, Lundbeck's and TheraCom's repeated emphasis on prescribers entirely misses the point.[5] Physicians prescribing Xenazine is not an intervening act at all but a preceding event that merely set the stage for Defendants-Appellees' scheme. *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.,* 943 F.3d 1243, 1257-58 (9th Cir. 2019) ("*Painters*") ("[P]rescribing physicians do not constitute an intervening cause to cut off the chain of proximate cause. . . . Here, since Actos was a prescription drug, it was required to be prescribed by physicians. . . . Further, 'because of the structure of the American health care system,' Defendants have always known that 'physicians would not be the ones paying for the drugs they prescribed.' . . . If we were to hold the opposite . . . drug manufacturers . . . could continuously hide behind prescribing physicians and pharmacy benefit managers." (citations omitted)); *Humana, Inc. v. Biogen, Inc.*, 666 F. Supp. 3d 135, 153 (D. Mass. 2023) ("[I]n the prescription-drug marketplace, a scheme to defraud often targets the government or third-party payors—the entities that actually pay for the drugs at issue. . . . [I]t is the payors . . . who are the injured parties.").[6]

---

[5] Lundbeck's and TheraCom's suggestion that MSP's proposed FAC does not contain allegations of Defendants-Appellees' marketing to physicians blatantly disregards the allegations therein. [JA318, JA333-334, JA368].

[6] *See also In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 39 (1st Cir. 2013) ("The fact that some physicians may have considered [other] factors . . . in making their prescribing decisions does not add such attenuation to the causal chain

Further, Lundbeck's and TheraCom's cursory defense of the assumption of risk analysis in *Ironworkers Loc. 68 v. AstraZeneca Pharms.*, 634 F.3d 1352 (11th Cir. 2011) ("*Ironworkers*"), is wildly misplaced. Lundbeck and TheraCom merely repeat the district court's erroneous belief that *Ironworkers* involved proximate cause at all; it did not. *See id.* at 1360-69 (rejecting the lower court's finding that causation was lacking). Additionally, the assumption-of-risk analysis in *Ironworkers*, which focused on private health insurance and, to the extent antitrust principles even apply to RICO, disregards the precepts of *Hanover Shoe*,[7] is wholly inapplicable to Medicare Part D plans and has been soundly rejected by numerous courts across the country. *See, e.g., In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 641 (3d Cir. 2015); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 159 F. Supp. 3d 898, 920 (N.D. Ill. 2016); *In re Neurontin Mktg. & Sales Pracs. Litig.*, 799 F. Supp. 2d 110, 120 (D. Mass. 2011); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *22 n.32 (N.D.

---

as to eliminate proximate cause. . . . [T]his argument presents . . . a damages question.").

[7] As the *Kugler* Court explained, "where the directly defrauded party presses a RICO claim against the alleged wrongdoer, there is no viable 'pass on' defense, i.e. defendants cannot argue that plaintiffs not entitled to recover damages for costs which it has theoretically already passed on to its subscribers in the form of premium adjustments." *State Farm Mut. Auto. Ins. Co. v. Kugler*, 2011 WL 4389915, at *8–10 (S.D. Fla. Sept. 21, 2011) (citing *Hanover Shoe Inc., v. United Shoe Machinery Corp.*, 392 U.S. 481, 492 (1968)). Lundbeck's and TheraCom's "assumption of risk" argument is no more than a "pass on" defense.

Cal. Feb. 21, 2017); *Humana Inc. v. Mallinckrodt ARD LLC*, 2020 WL 3041309, at

*15 (C.D. Cal. Mar. 9, 2020); *In re Nat'l Prescription Opiate Litig*., 440 F. Supp. 3d

773, 794 n.19 (N.D. Ohio 2020); *Kugler*, 2011 WL 4389915, at *8–10. Lundbeck

and TheraCom make no attempt to distinguish this body of case law.

Additionally, Defendants-Appellees' co-payment scheme provided a cost-

free option to the beneficiary, but not the health plan, thereby inducing increased

dispensing of Xenazine. [*See* JA048-049 ("[P]atients may be urged to seek, and

physicians may be more likely to prescribe, a more expensive drug if co-payment

assistance is available for that drug *but not for less expensive but therapeutically

equivalent alternatives*." (emphasis added))].[8] Importantly, it is widely understood

that high co-pay costs can and do cause patients to abandon prescriptions or

otherwise change treatment regimen. [*See* JA056]. And, as the OIG-HHS

specifically recognized, Medicare's co-payment requirement is a "market safeguard

against inflated prices," which was eliminated when CVC and Lundbeck unlawfully

covered the co-payments of MSP's Assignors' beneficiaries. 70 Fed. Reg. 70623-

03, 70626 (Nov. 22, 2005). Thus, to overly inflate prices without the consequences

of market forces, Lundbeck illegally funneled money to CVC, in violation of the

laws and regulations governing Medicare, to cover the co-payments of patients who

---

[8] The allegations in the proposed FAC further reinforce that Defendants-Appellees
induced increased dispensing of Xenazine. [JA317-318, JA332-335, JA343, JA362-
364, JA367-369; JA371-372].

were prescribed Xenazine.

As for the claims submitted directly to MSP's Assignors that were tainted by Defendants-Appellees' repeated violations of the laws and regulations governing Medicare, including the AKS, Lundbeck and TheraCom simply get the law wrong. First, the Supreme Court has explicitly held first-person reliance on false statements is not required for predicate acts of mail and wire fraud. *See Bridge*, 553 U.S. at 649. Moreover, Lundbeck and TheraCom appear to misunderstand why such violations tainted claims for Xenazine. AKS compliance is a precondition for payment of every Medicare claim.[9] The AKS is "designed to prevent fraud, waste, and abuse" and MAOs must certify compliance with it. 42 CFR § 423.505(h)(1). As such, MAOs are *prohibited* from paying *any* AKS tainted claim, even if the claim was submitted by an innocent third-party, like a physician or pharmacy. *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 41 F. Supp. 3d 323, 334-35 (S.D.N.Y. 2014). As a result, Defendants-Appellees' scheme rendered all claims for Xenazine unpayable, and the conflict of interest created by the scheme "tainted the whole transaction[.]" *United States v. Miss. Valley Generating Co.*, 364 U.S. 520, 524 (1961). In other words, when the "conditions [for participation and payment] are not satisfied, nothing is

---

[9] *See U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 313-14 (3d Cir. 2011) ("Compliance with the AKS is clearly a condition of payment under Parts C and D of Medicare."); *McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.,* 423 F.3d 1256, 1260 (11th Cir. 2005) (similar); *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.,* 647 F.3d 377, 394 (1st Cir. 2011) (similar).

due." *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008).[10]

As for the issue of damages, Lundbeck and TheraCom entirely ignore this Court's pronouncement that "damage-calculation hurdles present questions of fact that can't be resolved at the pleading stage." *Albert*, 68 F.4th 914 (citing *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 303 (3d Cir. 2020)); *see also Painters*, 943 F.3d at 1251.17F[11] Any concerns surrounding duplicative recovery of damages are not implicated here, where there is only one set of injured parties: MSP's Assignors. MSP did not allege, and Lundbeck and TheraCom have never suggested that patients or physicians (or anyone else for that matter) were injured by the overcharged prices of Xenazine paid directly by MSP's Assignors, the induced increased dispensing of Xenazine underlying the claims for payment submitted directly to MSP's Assignors, and the tainting, through bribery, of the

---

[10] Lundbeck and TheraCom's reference to *MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, 2023 WL 4162338, at *6 (C.D. Cal. May 19, 2023), doubles down on the district court's improper reliance on *Avanir*. *Avanir* was **_not_** decided on proximate cause grounds and involved radically different RICO allegations. *See Avanir*, 2023 WL 4162338, at *1. Thus, *Avanir* is inapplicable here. Moreover, neither *U.S. ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828 (8th Cir. 2022), nor *U.S. ex rel. Martin v. Hathaway*, 63 F.4th 1043 (6th Cir. 2023), were RICO cases and are also inapposite.

[11] Many courts have found that the damages calculation is not determinative of proximate cause at all. *See, e.g., In re Am. Honda Motor Co., Inc. Dealerships Rels. Litig.*, 941 F. Supp. 528, 544 (D. Md. 1996); *Faith Enters. Grp., Inc. v. Avis Budget Grp., Inc.*, 2012 WL 1409403, at *4 (N.D. Ga. Apr. 20, 2012); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 904-05 (N.D. Cal. 2018).

Xenazine claims that were submitted directly to MSP's Assignors.

Last, in a desperate attempt to rescue the district court's incorrect view of *Albert* in its order denying MSP's Rule 59(e)/60(b) motion, [JA435-436], Lundbeck and TheraCom try to distinguish *Albert* from the instant case. [Defs.-Appellees' Br. at 38-39].[12] However, Lundbeck's and TheraCom's argument ignores the realities of the Medicare system and the nature of Lundbeck's settlement with the Government. For one, the Government and MSP's Assignors pay, at least in part, for a different "slice of the pie" when it comes to prescription drugs. *Albert*, 68 F.4th at 914. The Government *itself* pays for a very narrow set of prescription drugs under Medicare Parts A and B (e.g., prescription drugs administered in hospitals, skilled nursing facilities, and hospital outpatient settings), and for prescription drugs under the Civilian Health and Medical Program of the Department of Veterans Affairs ("ChampVA"). By contrast, MSP's Assignors are private entities that administer Medicare Parts C and D who stand in front of the Government to pay directly for prescription drugs under Medicare Parts C and D. Accordingly, any supposed injury suffered by the Government from overcharged prescription drugs for which MSP's

---

[12] Additionally, Lundbeck's and TheraCom's observation that the AKS does not provide a private cause of action is a red herring. [Defs.-Appellees' Br. at 39]. MSP is not pursuing a claim under the AKS; it is pursuing a RICO claim based on the predicate acts of mail and wire fraud and violations of the Travel Act. Just because there is no private cause of action for mail and wire fraud, for example, which are federal criminal statutes only enforced by the Government, does not shut the door to a civil RICO action based on such predicates to private litigants.

Assignors paid is inherently derivative of the injury suffered by MSP's Assignors.[13] Thus, the casual directness of the injury to MSP's Assignors is functionally identical to that of the plaintiffs in *Albert* who directly paid for overcharged telephone services. MSP's Assignors are the only and first ones to suffer an injury from submissions of overcharged payments for Xenazine.

Moreover, the Government's settlement with Lundbeck (which was for the benefit of the Government *only*) involved resolution of allegations of AKS violations, which, by definition, "constitute[] false or fraudulent claim[s]" under the FCA. 42 U.S.C. § 1320a-7b(g). A false or fraudulent claim submitted to the Government or Government contractor is a far cry from engaging in and conspiring to commit racketeering activities to submit overpriced claims of Xenazine to MSP's Assignors. As such, the Government's settlement never addressed the injuries suffered by MSP's Assignors.

Thus, Lundbeck's and TheraCom's arguments regarding proximate cause are meritless and fail to justify the district court's erroneous findings. Accordingly, this Court should reverse the district court's dismissal based on proximate cause as

---

[13] Lundbeck's and TheraCom's reliance on *Longmont United Hosp. v. Saint Barnabas Corp.*, 305 F. App'x 892 (3d Cir. 2009), only underscores their failure to appreciate these distinctions within the Medicare system. While the Government may stand between one hospital participating in Medicare against another hospital, as in *Longmont*, it is MSP's Assignors that stand between dispensing specialty pharmacies, like TheraCom, and the Government

erroneous and reverse the district court's denial of MSP's Rule 59(e)/60(b) as an abuse of discretion.[14]

## C.    **The IPR**

Lundbeck's and TheraCom's contentions regarding the IPR fare no better than its proximate cause arguments. [Defs.-Appellees' Br. at 41-53]. For one, neither *NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931 (4th Cir. 1987), nor *Levey v. E. Stewart Mitchell, Inc.*, 585 F. Supp. 1030 (D. Md. 1984), was a purchaser case at all, and these cases simply reflect concerns over more directly injured parties. Moreover, Lundbeck's and TheraCom's observations about the similarity between RICO and the Clayton Act entirely neglect the Congressional intent underlying RICO. Initially, RICO was proposed as an antitrust amendment. *See* S. 2048, 90th Cong. (1st Sess. 1967). However, after reviewing this proposal, the American Bar Association recommended enacting an entirely separate law, which is what Congress did. *See* 115 Cong. Rec. 6994 (1969). According to the report:

> The use of antitrust laws [to] combat[] organized crime could create inappropriate and unnecessary obstacles. . . . Such a private litigant would have to contend with a body of precedent—appropriate in a

---

[14] Contrary to Lundbeck's and TheraCom's characterizations, MSP's Rule 59(e)/60(b) motion did not simply rehash previous arguments. Instead, the motion specifically identified the portions of the district court's order that were indeed clearly erroneous. [JA290-303]. Such clear errors did not predate the district court's order but arose directly from it, and MSP's motion was the first opportunity to raise those clear errors to the district court.

purely antitrust context—setting strict requirements on questions such as "standing to sue" and "proximate cause."

*Id*. at 6995; *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) ("[T]he court below created exactly the problems Congress sought to avoid [by] borrowing . . . from antitrust standing principles."). And Lundbeck and TheraCom entirely omit that the IPR was not created as creature of statutory construction but was a ***judicially created rule*** designed to balance out ***another judicially created rule***. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29, 735(1977).

Additionally, Lundbeck's and TheraCom's reliance on the decisions of three Circuits and a smattering of district courts to assert a supposed "majority" rule applying the IPR to RICO ignores the number of cases declining to do so. *See, e.g., In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1324-25 (D. Kan. 2018); *Bivens Gardens Off. v. Barnett Banks of Fla.*, 140 F.3d 898, 906 (11th Cir. 1998); *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, 2018 WL 1393790 at *19 (S.D. Fla. Jan. 26, 2018); *In re Copper Antitrust Litig.*, 2000 WL 34230131 at *19 (W.D. Wis. July 12, 2000); *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995).[15] Lundbeck and TheraCom make no attempt to

---

[15] Ironically, in Lundbeck's and TheraCom's repeated citations to *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, 2022 WL 3155035 (S.D. Fla. July 21, 2022) *report and recommendation adopted*, 2022 WL 4448256 (S.D. Fla. Sept. 23, 2022) ("*CVC*"), they conveniently omit that the *CVC* Court adopted the magistrate judge's explicit rejection of the IPR to RICO. *See* 2022 WL 3155035, at *12 n.3.

16

distinguish these cases. Thus, the IPR should have no application to RICO.

Further, Lundbeck's and TheraCom's argument that MSP's Assignors do not qualify as direct purchasers, such that the IPR would not apply, also misses the mark. MSP raised allegations that MSP's Assignors paid for Xenazine directly from specialty pharmacies, including TheraCom.[16] [JA072, JA218, JA316-317, JA322, JA323, JA330, JA333-334, JA373-374]. As for the supplemental spreadsheet to MSP's Complaint, MSP explained that "Plaintiffs were able to identify and confirm specific Xenazine claims that were 1) paid for by the Assignors; 2) involving co-payment by CVC during the relevant period; and 3) resulting in payments ***directly to TheraCom***." [JA218 (emphasis added)]. The spreadsheet sets forth such claims directly paid by MSP's Assignors.

Moreover, Lundbeck's and TheraCom's suggestions that the patients were the "purchasers" of Xenazine is befuddling. As the *Biogen* Court explained, "[i]n the prescription-drug marketplace, those purchasing functions are normally split three ways: the physician effectively makes the decision to buy the product; ***the health insurer effectively pays for it*** . . . ; and the patient owns and uses it." 666 F. Supp. 3d at 153. How can the patient be the purchaser when the patient does not pay? Considering Lundbeck is accused of providing funds to the patients, under

---

[16] Lundbeck's and TheraCom's attempt to characterize TheraCom as no more than a data hub is belied by TheraCom's *own admission* that it is a specialty pharmacy. [Doc. 34 at 10 ("TheraCom is a specialty pharmacy[.]")].

Defendants-Appellees' view, Lundbeck would be the purchaser of the product. This Court should reject this absurd position.

Regardless of Lundbeck's and TheraCom's quibbles with MSP's original Complaint, the allegations in the proposed FAC easily establish that MSP's Assignors directly purchased Xenazine from TheraCom and other specialty pharmacies. [JA316-317, JA330, JA333, JA363, JA366-367; Doc. 95-5]. Thus, Lundbeck's and TheraCom's contentions regarding the IPR are meritless. Accordingly, the district court's finding that the IPR applies to MSP's federal RICO claims was an abuse of discretion, and this Court should reverse.

## II.  DEFENDANTS-APPELLEES' ARGUMENTS REGARDING MSP's STATE LAW CLAIMS ARE MERITLESS

### A.  State Consumer Protection

The district court abused its discretion by applying RICO's directness test to MSP's state consumer protection claims in disregard of the applicable, and distinct, proximate causation standards. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) ("[A] district court abuses its discretion when it misapprehends or misapplies the applicable law."). As demonstrated in MSP's principal brief, the relevant states require only foreseeability or that the harm is likely to occur, as opposed to a direct relationship. [Pls.-Appellants' Corrected Br. at 27 n.21]. Ironically, the *Ironworkers* Court, which the district court heavily relied on, explained:

> [P]roximate cause analysis can take disparate forms . . . . [A]nother
> common test for proximate causation, beyond RICO's 'direct
> relationship' . . . , is **foreseeability** . . . . [T]hese tests, **are *not* one and
> the same** . . . . [T]to the extent that the state law inquiries may differ
> from RICO, **the court should have engaged in a different analysis**.

634 F.3d at 1359 n.19 (emphasis added). Still, the district court summarily dismissed

MSP's claims without engaging in, or even considering, the applicable standard.

Specifically, the district court found that "[b]ecause this Court cannot tie

Defendants' actions to federal law and damages, the same applies to duplicative state

law claims", further stating that MSP's state claims "must be dismissed because no

*direct* causal chain exists." [JA272 (emphasis added)]. The district court

subsequently upheld its erroneous proximate cause analysis, without any mention of

MSP's state law claims, concluding "Defendants' alleged violation did not 'directly'

lead to Plaintiffs' alleged injuries." [JA434-435]. Lundbeck and TheraCom simply

cannot escape this blatant misapplication of law.

Next, Lundbeck and TheraCom argue the district court had other bases for

dismissal, including MSP's "fail[ure] to identify: the Assignor at issue, the state in

which the transaction took place, to whom any payment was made, [or] the price

that was paid" and other unidentified "basic factual detail[.]" [Defs.-Appellees' Br.

at 54]. Even assuming *arguendo* that Lundbeck and TheraCom are correct, minor

factual deficiencies such as these are plainly curable by amendment. To wit, the

identities of MSP's Assignors are on the record, [*see* JA121–206], and the proposed

FAC features such allegations, [*see* JA316-317, JA330, JA332-333, JA363, JA366-367, JA373, JA401-412; Doc. 95-5]. Hence, even if dismissal of MSP's state consumer protection grounds was viable on these grounds (which they are not), doing so *with prejudice* would be improper, as MSP can provide such information.

Moreover, Lundbeck's and TheraCom's contention about the FTC Act having no private cause of action severely misses the mark. [Defs.-Appellees' Br. at 55-56]. Lundbeck's and TheraCom's citation to *J.R. v. Walgreens Boots Alliance, Inc.*, 2021 WL 4859603 (4th Cir. Oct. 19, 2021), which incorrectly cites to *3, [Defs.-Appellees' Br. at 55], is easily distinguishable, as it only deals with the lack of private causes of action under HIPAA and the FTC Act. Here, it is not disputed that there is no private right of action available under these statutes. Instead, MSP brings its claims under state consumer protection statutes allowing private causes of action for conduct that would violate the FTC Act. *See* Conn. Gen. Stat. § 42-110b(b); Fla. Stat. § 501.204(2); Ill. Comp. Stat. § 505/2; Mass. Gen. Laws ch. 93A, § 2(b); Mich. Comp. Laws § 445.911(3)(c); Ohio Rev. Code Ann. § 1345.02(c); *Braynina v. TJX Companies, Inc.*, 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016).

Further conflating matters, Lundbeck and TheraCom inexplicably invite this Court to apply the proximate cause standard from the Clayton Act rather than the relevant proximate cause standards for each consumer protection statute. [Defs.-Appellees' Br. at 56]. This Court should not accept such a misguided invitation. *See*

*First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 22 n.14 (D.D.C. 1998) ("[F]ederal limits cannot be imposed reflexively on state law claims, and examination of relevant precedent is required."); *see also Ironworkers,* 634 F.3d at 1359 n.19.

In sum, Lundbeck and TheraCom do little more than replicate the district court's misapplication of law to MSP's state consumer protection claims. Imputing RICO standards (or those for the Clayton Act, for that matter) is simply untenable. Thus, neither the district court nor Lundbeck and TheraCom offer any legitimate basis for dismissing MSP's state law claims, let alone with prejudice. This was a clear error the district court failed to address on reconsideration.

## B.    Unjust Enrichment

Lunbeck and TheraCom argue that the district court's dismissal of MSP's unjust enrichment claims was warranted because (1) a contract exists between MSP's Assignors and third parties; and (2) MSP failed to allege that any *direct* benefit was conferred. [Defs.-Appellees' Br. at 57-58]. Each contention is meritless.

First, as stated by the district court, "it is well established that if there is a contract **between the parties**, the contract governs the claim and recovery . . . is improper." [JA272 (emphasis added)]. This is essentially the same general rule applied in the states listed in MSP's unjust enrichment claim. [Pls.-Appellants' Corrected Br. at 30 n.24]. Moreover, notwithstanding Lundbeck's and TheraCom's efforts to conceal this fact, their own case law demonstrates that dismissal requires

21

a contract *between the parties*. *See Run Them Sweet, LLC v. CPA Global Ltd.*, 224 F. Supp. 3d 462, 469 (E.D. Va. 2016) ("[P]laintiff's unjust enrichment claim must be dismissed because ***the parties*** unquestionably ***have an express contract***." (emphasis added)). Here, it is undisputed that the only purported contracts are between MSP's Assignors and the Government and/or patients, not between the parties in this case. Thus, the first contention does not support dismissal.

Second, Lundbeck and TheraCom contend that the "Assignors did not confer any *direct* benefit on Defendants" and "[t]he lack of directness therefore dooms MSP's alternative argument." [Defs.-Appellees' Br. at 58]. But the one case cited by Lundbeck and TheraCom says absolutely nothing about a *direct* benefit requirement. *See GIV, LLC v. Int'l Bus. Machines Corp.*, 2007 WL 1231443, at *2 (E.D. Va. Apr. 24, 2007). Thus, Lundbeck and TheraCom's arguments fail. Accordingly, the district court erred in dismissing MSP's unjust enrichment claims and abused its discretion in failing to correct the clear error of law it committed.

## C.    Florida RICO

Because Lundbeck and TheraCom are wrong about MSP's federal RICO claims, as discussed above, so too are they wrong about MSP's Florida RICO claim. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). Moreover, Lundbeck and TheraCom offer no response to MSP's contention that Florida RICO and federal RICO do differ, as the former can be predicated on

22

radically different acts than those enumerated in the latter. [Pls.-Appellants' Corrected Br. at 42 n.37].[17] Specifically, the submission of a false claim to a health plan is a predicate act under Florida RICO. *See* Fla. Stat. §§ 722.102(a)22, 817.234; *Gov't Emps. Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*, 2017 WL 1196438, at *4 (M.D. Fla. Mar. 29, 2017); [JA096-098, JA415-417]. Accordingly, this Court should disregard Lundbeck's and TheraCom's arguments and reverse the district court's erroneous dismissal of MSP's Florida RICO claim.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MSP'S MOTION FOR INJUNCTIVE RELIEF

The district court denied MSP's motion for a temporary restraining order ("TRO") and preliminary injunction on the basis that MSP failed to establish that they were likely to succeed on the merits, i.e., on the same grounds for dismissing MSP's federal RICO and state law claims. [*See* JA275]. Considering the district court erred in dismissing MSP's federal RICO and state law claims, as discussed above, the district court abused its discretion in denying Plaintiffs-Appellants' motion for a TRO and preliminary injunction.

---

[17] Notably, Florida courts have distinguished the applicability of the IPR to statutes other than the Florida antitrust statute. *See, e.g., Mack v. Bristol-Myers Squibb Co.*, 673 So.2d 100, 102–05 (Fla. Dist. Ct. App. 1996). Thus, while it is an open question whether the IPR applies to Florida RICO, it is clear the IPR *does not* apply to the Florida Deceptive and Unfair Trade Practices Act. *See id*.

## IV.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MSP'S REQUEST TO AMEND THE COMPLAINT

Lundbeck's and TheraCom's contention that the district court properly considered whether amendment would be futile is belied by the district court's own order. [Defs.-Appellees' Br. at 63-65]. As evidenced throughout this brief, the district court had an incorrect understanding of the factual scenario, going as far as stating that Plaintiffs Assignors provided payment to the Patient Assistance Program, [JA269]; they did not. Even worse, the district court provided zero analysis of whether the allegations contained in the proposed FAC were futile; the order does not mention the proposed FAC at all. [*See* JA429-440].

Lundbeck's and TheraCom's attempt to impute such an analysis defies logic and is simply contrary to the binding case law of this Circuit. For one, the proposed FAC was explicitly intended to address the purported deficiencies identified by the district court in its dismissal order, even providing allegations to establish the inapplicability of the IPR to this case, [JA305-309], an issue the district court explicitly passed on in its dismissal order, [JA262 n.7]. Thus, even if the district court was indeed doubling down on its prior analysis, any meaningful analysis of futility would necessarily require the district court to say why such allegations do not cure the purported pleading deficiencies. Such an analysis was not optional. *See Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 470-71 (4th Cir. 2011). What's more, Lundbeck's and TheraCom's emphasis on the district court's statements

24

regarding futility in its dismissal order, [*see* JA280], only demonstrates that the district court erred, as it prejudged a possible amended complaint without understanding the factual scenario before it. This is contrary to bedrock law, *see* Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962), and the fact remains that MSP's motion was the first and only request to amend in this case.

Last, Lundbeck and TheraCom attempt to justify the district court's failure to follow the binding guidance of this Court by arguing, in barely over a page, that every new allegation in the proposed FAC is futile. This Court should not be moved by this "cursory" analysis. [Defs.-Appellees' Br. at 66]. Instead, this Court should look to the proposed allegations themselves, which readily establish that (1) MSP's Assignors were direct purchasers from specialty pharmacies, including TheraCom, [JA316–317, JA330, JA333, JA363, JA366–367; Doc. 95-5]; and (2) that Defendant-Appellees proximately caused RICO injury to MSP's Assignors by (a) inducing increased dispensing of Xenazine, [JA317-318, JA332-335, JA343, JA362-364, JA367-369, JA371-372]; (b) eliminating price sensitivity to radically inflate the price Xenazine, [JA314-315, JA319-322, JA328, JA332, JA334-335, JA363, JA367-368, JA372-373, JA375-376]; and (c) engaging in conduct in violation of the AKS and state bribery laws to cause MSP's Assignors to pay tainted claims for Xenazine, [JA316-319, JA322-323, JA332, JA339, JA346-347, JA360, JA364-367, JA367-370, JA372-373, JA375]. Fatally, Lundbeck's and TheraCom's

futility argument specifically addresses none of these proposed allegations. Accordingly, the district court abused its discretion.

## CONCLUSION

MSP respectfully requests that this Court reverse the district court's dismissal and denial of injunctive relief. Alternatively, MSP respectfully request that this Court reverse the district court's denial of MSP's motion to alter or amend the judgment or relief from judgment, including the district court's denial of MSP's request to amend the complaint.

Dated: June 12, 2024                    Respectfully submitted by,

                                        /s/Shereef H. Akeel
                                        Shereef H. Akeel (MI Bar No. 54345)
                                        Adam S. Akeel (MI Bar No. 81328)
                                        Samuel R. Simkins (MI Bar No. 81210)
                                        Daniel W. Cermak (MI Bar No. 84460)
                                        Hayden Pendergrass (MI Bar No. 86888)
                                        AKEEL & VALENTINE, PLC
                                        888 W. Big Beaver Road, Ste 350
                                        Troy, Michigan 48084
                                        (248) 269-9595
                                        Shereef@akeelvalentine.com
                                        Adam@akeelvalentine.com
                                        Sam@akeelvalentine.com
                                        Daniel@akeelvalentine.com
                                        Hayden@akeelvalentine.com
                                        David Hilton Wise (VA Bar No. 30828)
                                        William N. Evans (VA Bar No. 87506)
                                        WISE LAW FIRM, PLC
                                        10640 Page Street, Ste 320
                                        Fairfax, Virginia 22030
                                        (703) 934-6377

dwise@wiselaw.pro
wevans@wiselaw.pro

John W. Cleary (FL Bar No. 118137)
MSP RECOVERY LAW FIRM
2701 S. LeJeune Rd., 10th Floor
Coral Gables, FL 33134
(305) 614-2222
jcleary@msprecoverylawfirm.com

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document does not exceed 6,500 words, as it contains 6,317 words including footnotes.

2.  This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word in proportionally spaced typeface using Times New Roman font in 14-point size.

Dated: June 12, 2024             */s/Shereef H. Akeel*
                                 Shereef H. Akeel

                                 *Counsel for Plaintiffs-Appellants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2024, I filed and served the foregoing filing with the Clerk of the Court by causing a copy to be electronically filed via the appellate CM/ECF system. I also certify that the participants in the case are registered CM/ECF users and will be served via the CM/ECF system.


Dated: June 12, 2024                  */s/David H. Wise*
                                      David H. Wise

                                      *Counsel for Plaintiffs-Appellants*